JOSEPH KELLER and EDNA RIVES, on behalf of themselves and all other stockholders of defendant, Wilson & Co. Inc., similarly situated.

*vs.*

WILSON & CO. INC.

*Kent, May* 24, 1935.

*Charles L. Terry, Jr.,* of the firm of Terry & Terry, and *Abraham L. Pomerantz,* of New York City, for complainants.

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* for defendant.

THE CHANCELLOR: The question in this case is one of corporate power. The bill does not attack the fairness of the recapitalization. The sole contention is that the cor-

poration has no lawful power to destroy the preferential right of the Class A stock to its old dividend privilege. That the right to the preference in its future operation may be lawfully altered is not controverted by the complainants' solicitors. *Morris v. American Public Utilities Co.*, 14 *Del. Ch.* 136, 122 *A.* 696, 703, settles that question in favor of the power to effect the change.

The question here is whether the right to the payment of past dividend preferences which have accrued can be taken away by amendment to the charter duly adopted in accordance with the terms of the statute. The *Morris Case,* just cited, which was commented on with approval by the Supreme Court of this State in *Pennington v. Commonwealth Hotel Construction Corp.*, 17 *Del. Ch.* 394, 395, 155 *A.* 514, 75 *A. L. R.* 1136, decided that there was no power in a corporation under the then existing law to so amend its charter as to destroy the accrued right of preferred stockholders to be paid all accumulated dividends in arrear at the date of the amendment, before any dividends could be paid on existing junior stock.

That which the corporation sought to accomplish in that case was reposed for its justification on *Section* 26 of the *Act* as the same existed in 1923 [*Rev. Code* 1915, § 1940, as amended by act March 20, 1917 (29 *Del. Laws c.* 113, § 12)] and this court held that while "preferences" could be altered by way of amendment of the corporate charter, yet the right to be paid cumulative dividends which had been matured by time prior to the proposed amendment was not a "preference" within the meaning of the section.

In 1927, however, *Section* 26 (*Rev. Code* 1915, § 1940) was amended by the Legislature (35 *Del. Laws, c.* 85, § 10) so as to broaden to a very material extent the power of self-amendment which corporations created under the act might exercise. I think there can be no doubt on this—that the legislative amendment of 1927 was purposely adopted in order to obviate the consequences of the *Morris Case.*

In that year *Section* 26 of the general act under which the defendant corporation was created was amended so as to permit corporations to exercise a power of amendment of their articles of incorporation, *inter alia,* "by increasing or decreasing its authorized capital stock or reclassifying the same * * * or * * * by changing the * * * preferences, or relative, participating, optional, or other special rights of the shares." The amendment, in view of the *Morris Case* which provoked it, certainly was intended to embrace within its scope something more than mere "preferences." It was intended to authorize amendments affecting cumulated dividends as well, such being the type of amendment which the *Morris Case* presented. Any corporation which is entitled to exercise the power of self-amendment conferred by *Section* 26 as it has existed since 1927, has the power to amend its certificate of incorporation by destroying the right of a cumulative preferred stock to be paid its arrearages of dividends, provided of course the requisite number of shares of the affected stock give their consent. *Yoakam v. Providence Biltmore Hotel Co., (D. C.)* 34 *F.* (2d) 533, 543-544; *Harr, et al., v. Pioneer Mechanical Corp., (C.C.A.)* 65 *F.* (2d) 332; *certiorari* denied, 290 *U. S.* 673, 54 *S. Ct.* 92, 78 *L. Ed.* 581; *Lowell v. United Milk Products Corp., et al., (D. C. N. D. Ohio, E. D.* 1934).

In *Morris v. American Public Utilities Co.,* this court observed that there is no principle of law "which would forbid the members of a corporation to give to a majority of a class of stockholders the right to cancel obligations which the entire class might hold against the corporation, even though some of the class might refuse their assent to such procedure. If such a power is agreed upon, then its exercise would be no more than the assertion of a stipulated right." *Section* 26 in its present form (38 *Del. Laws c.* 91, § 3), when it is impliedly written into a corporate charter, is tantamount to an agreement by the stockholders upon such a stipulated right. If it be said that such a stipulation is a hard one, the answer of those who defend it would

obviously be first, that it is a stipulation that is voluntarily entered into; second, that the common enterprise may find itself in such a plight, as it is contended this particular defendant did, that if it were not for such a stipulation the structure of the whole corporate edifice might fall to the great injury of all the stockholders it houses, so to speak; and finally, the security against an oppressive resort to an exercise of the stipulated right is the power of the majority of those affected by it, or more if the charter so provides, to defeat its operation by withholding their assent. In this as in many other instances of corporate decision, the principle inherent in a democracy prevails, *viz.*, that the voice of a majority at the least shall, as a practical proposition, be accepted as an expression of what is best for the whole. There has been a gradual departure in corporate government and functioning in recent times from the old conception which formerly prevailed when the right of individual veto gave dangerously obstructive powers to a single dissentient. Whether it be right or wrong as a matter of policy, such has been the trend in modern legislation in its treatment of the corporate organism. Perhaps its most pronounced exhibition is to be found in the recent amendment to the *National Bankruptcy Act,* familiarly known as *Section 77B* (11 *USCA* § 207).

The only question remaining in this case is whether the particular corporation which is here a defendant, is entitled to exercise the power which *Section* 26 of the act in its 1927 form confers. The defendant was incorporated in 1925 and its charter was amended in 1926. The stock which the complainants hold is stock that was issued under the 1926 amendment to the charter. Now if *Section* 26 of the act as it existed in 1926 were the law today, the case of *Morris v. American Public Utilities Co.* would require that the complainants be afforded relief. If, however, *Section* 26 as it now exists and has, in the particulars that are here important, existed since 1927, is available to the defendant as a source of power, the complainants must be denied relief.

The question, then, in its last analysis is the narrow one of whether it was in the power of the Legislature by way of amendment of the act, to enlarge the scope of the subjects which corporations theretofore existing might themselves alter by self-amendment of their own charters, so as to effect changes which, when the corporations were created, they could not effectuate against the will of an objecting stockholder.

That question, under a state of facts somewhat different from the facts *sub judice*, was rather fully examined by this court in *Davis, et al., v. Louisville Gas & Electric Co.,* 16 *Del. Ch.* 157, 142 *A.* 654, and answered in the affirmative. It is said, however, that the facts in that case were not concerned with the alteration of rights comparable in legal dignity to the right here sought to be destroyed, and that the case is therefore not of pertinence. A reading of the opinion, however, will disclose that the decision did not turn on whether the nature of the rights which the charter amendments affected were violable ones such as "preferences" and therefore within the reach of the legislative authorization to the corporation to alter. The discussion proceeded on the broad ground of whether the Legislature had, in reserving a power to amend the *General Corporation Act,* reserved a power to enlarge the field of operation in which the corporation itself might exercise the power of voluntary amendment of its charter so as to cover subjects which theretofore it could not encroach upon. The argument and the opinion assumed that the amendments which the corporation had undertaken to adopt in that case, were such that, if *Section* 26 in its 1927 form were not available to the corporation, the amendments were destitute of legal support.

That case, therefore, as it was treated by the solicitors and the court, presented the precise question which this one presents. The two cases are in principle the same. There, as here, the corporation was created before the 1927 amendment of *Section* 26; and there, the proposed amend-

ments were assumed to be, while here they are conceded to be, not in the category of mere "preferences," but in the status of "special rights." Furthermore, the charter of this corporation contains a power, similar in substance though not in terms, to the charter provision found in the *Davis Case,* to exercise all powers which might thereafter be conferred by the State by way of amendment of the act under which the corporation was created.

There is no occasion to recanvass the question of law which was fully debated and considered in the *Davis Case.* It is sufficient to say that I adhere to that case. It controls this one. The demurrer should therefore be sustained.

Order accordingly.