LEWIS J. TROUNSTINE,

*vs.*

REMINGTON RAND, INC., a corporation existing under the laws of the State of Delaware.

*New Castle, July* 21, 1937.

*Stewart Lynch* and *Jacob K. Javits, Selig J. Levitan,* and *Emanuel Becker,* all of New York City, for complainant.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for defendant.

THE CHANCELLOR: On a hearing such as this, the well pleaded allegations of the bill are taken as true, and the plea is taken to be true in fact. If the plea were a negative plea, the rule, in respect of the allegations of the bill, would necessarily be different.

Briefly the facts shown by the bill and plea are as follows.

The defendant was incorporated under the General Corporation Law of this State on January 1, 1927. The capital stock consisted of a seven per cent cumulative first preferred stock of the par value of one hundred dollars per share (156,840 shares outstanding), an eight per cent cumulative second preferred stock of the par value of one hundred dollars per share (18,554 shares outstanding), and a common stock of the par value of one dollar per share (1,290,967 shares outstanding).

The complainant held one hundred and fifty shares of the first preferred stock prior to July 30, 1935.

On the last named date the arrears in cumulative dividends on the first preferred stock amounted to twenty-six dollars and twenty-five cents, and on the second preferred stock to thirty dollars, per share.

On that date the stock of the defendant was reclassified by an amendment to the charter to which two-thirds or more of each class of stock consented. The complainant did not consent. He voted his shares in opposition. By the amendment each share of the old classes became automatically changed into shares of a different character. The details are not necessary to describe, except that the important point should be mentioned that the first preferred shares which the complainant had held were declared to be turned into shares having different rights and preferences from the old and the dividends of twenty-six dollars and twenty-five cents cumulated thereon were extinguished by the reclassification. This, the complainant contends, was in violation of his contractual rights and beyond the power of the corporation to accomplish. *Keller, et al., v. Wilson & Co., Inc.*, 21 *Del. Ch.* 391, 190 *A.* 115.

Before the plan of reclassification was voted upon, the complainant filed a suit in the Supreme Court of New York to enjoin the defendant and its directors from doing anything in furtherance of the plan. After suit was filed and before the meeting was held, the complainant was advised by his lawyer that this court had lately, viz., on May 24, 1935, decided in a similar suit (see *Keller, et al., v. Wilson & Co., Inc.*, 21 *Del. Ch.* 13, 180 *A.* 584) adversely to the complainant's contention in the New York suit and that the decision so made would be binding on the New York Supreme Court. Acting on this advice the complainant withdrew his motion for injunction in the New York court.

The complainant alleges, however, that he continued to protest against the proposed reclassification. But nearly one year later, to be exact on April 13, 1936, the complainant transmitted his first preferred shares to the corporation with the request that certificates be issued to him in lieu thereof for the kinds of stock which he was entitled to receive in accordance with the plan of reclassification which he had theretofore opposed. On that date, the new stocks

received in lieu of the old stock had a market value in excess of the latter's redemption value, including accumulated dividends. The complainant says that he made the exchange because of the duress practiced upon him by the defendant. What the alleged duress consisted of appears to be this, that the defendant, in assuming to make the reclassification was asserting an unlawful power, and that it threatened to pay dividends thereafter only on the new stock created by such reclassification and not on the old first preferred stock. It is not necessary to pause in order to demonstrate that such acts cannot constitute duress as that term is understood in the law.

For the one hundred and fifty shares of old first preferred stock, the complainant received certificates for one hundred and fifty shares of a new five per cent preferred stock, one hundred and fifty shares of a new six per cent preferred stock and seventy-five shares of common stock. Prior to April 13, 1936, when the complainant finally concluded to turn in his old stock for new, the defendant had declared dividends on the new preferred stocks. When the complainant made the exchange he received two back dividends of cash on the new five per cent preferred stocks and two stock dividends that had been declared on the new six per cent preferred stock. After April 1, 1936, the complainant received cash dividends on his two preferred stocks until another recapitalization of the defendant was effected on September 22, 1936, and a cash dividend on the common stock and a scrip representing rights to a fractional share of common stock.

Whether the complainant after the second reclassification of stock in September, 1936, exchanged his then holdings for the new securities provided for in the second reclassification, does not appear. He accepted dividends, however, of cash and scrip as the same were declared, which were payable to him in right of the stocks he received out of the reclassification of July, 1935.

The complainant contends that the reclassification of September, 1936, was based upon the reclassification of 1935. As the latter, he contends, was void, the former which is integrated with it is also void. The complainant's whole attack centers on the validity of the 1935 reclassifying amendment to the charter.

On November 10, 1936, the Supreme Court of this State reversed the decision of the Chancellor in *Keller, et al., v. Wilson & Co.*, 21 *Del. Ch.* 391, 190 *A.* 115, and immediately thereafter the complainant demanded that the defendant's recapitalization or reclassification of stock be set aside, and that no dividends be paid on any class of stock until the dividends accumulated on the original seven per cent first preferred stock had been fully paid.

The bill has a double aspect. It prays first that the arrearages which had accumulated on the old seven per cent cumulative first preferred stock be paid to the complainant and others in like situation with him, and that the arrearages which had accumulated on the old eight per cent cumulative preferred stock be paid to the old holders of that stock. The second aspect of the prayers is that the two reclassifications be declared absolutely void in law, that the defendant be compelled to restore its capital structure to its original form, and that, in order completely to restore the *status quo ante*, the defendant shall call in all the shares now outstanding, issue to the holders thereof their original equivalents and force from everybody who has received dividends under either of the reclassifications the respective amounts received by them.

The defendant by its plea contends that under the facts as they have been hereinbefore briefly recited, the complainant is barred from maintaining his suit, because he has acquiesced in the acts complained against by tendering his stock in exchange and receiving dividends on the new stock; and secondly because he has been guilty of laches.

. The complainant raises the point that the plea should be overruled because it is double. The alleged duplicity consists in this, that it presents two grounds for a bar, viz., acquiescence and laches. It is of course fundamental that a plea should be single. The rule of singleness is not offended because of a variety of circumstances or a number of facts which it may set up, if they all tend to one point. 1 *Daniel Chancery Practice,* (*4th Am. Ed.*) 603, 607. There are cases, however, where a double plea is entirely proper. Where the bill presents a claim that is itself double or in the alternative, it is permissible for a plea to be filed addressed to each of the two alternatives of the bill. 1 *Daniel Chancery Practice,* (*4th Am. Ed.*) 609. The instant case is just such a case. The complainant seeks (a) complete rescission of the two reclassifications, and (b) that he be paid the arrearages on the old seven per cent preferred stock. It is entirely conceivable that the right to (a) might be denied and yet the right to (b) granted. The plea of laches is very appropriately applicable to (a) and the plea of acquiescence to (b). The plea, as I consider it, advances a single point in defense of each of the two claims or alternatives made by the case which the bill presents.

I examine now the first alternative above designated as (a), viz., the relief of restoration of the original capital structure of the defendant. That the complainant is barred by laches from securing that relief, seems to me to admit of no doubt. The averments of the plea supplement the allegations of the bill and together they show that the original preferred shares have by two reclassifications been transmuted into a large number of shares of an entirely different nature and these in turn have changed hands by transactions on an active market. New owners have been introduced as stockholders through sales and purchases, stock dividends have been declared and it is manifest that the tangled skein of events has become impossible of unravelling. The complainant waited for over a year and

seven months before filing his present bill, during which period the involvement was becoming daily more involved. The reclassifications, a number of cash and stock dividends, and numerous shiftings of ownership were operating during this period of delay to make more difficult the restoration of the *status quo ante*. The problem of getting back the dividends that have been paid, as the complainant thinks should be done, and of adjusting the rights and equities of innocent purchasers for value is so insurmountable as to make an attempt at its solution the most fantastic and desperate I dare say that any court can be found ever to have undertaken.

It is no answer to this for the complainant to say that his delay was occasioned by the mistaken view of the law which this court led him into by the decision in the *Keller Case*. No one can regret more than does the court, when an erroneous decision has been made, and persons are misled thereby. It is a general proposition, however, that mistakes of law are not mistakes that courts will relieve against. *Com'rs. of Lewes v. Breakwater Fisheries Co.*, 13 *Del. Ch.* 234, 117 *A.* 823. This rule is not the less applicable because the mistake of law was induced by a lower court which was later reversed, or by the overruling by a court of its own prior decisions. *Lyon v. Richmond*, 2 *Johns. Ch.* (*N. Y.*) 51, 60; *Pittsburgh, etc., v. Lake Superior, etc., Co.*, 118 *Mich.* 109, 76 *N. W.* 395; *Baker v. Pool*, 56 *Ala.* 14; *Kelly v. Turner*, 74 *Ala.* 513, 520; 10 *R. C. L.*, p. 314, § 37.

I now turn to the other alternative side of the case which the bill presents, before referred to as (b), viz., the side which seeks to compel the defendant to pay to the complainant all the arrearages on the old first preferred stock. The reclassification of July, 1935, extinguished those arrearages. The opinion of the Supreme Court of this State in *Keller, et al., v. Wilson & Co., Inc., supra*, is to the effect that it is beyond the power of a Delaware corporation cre-

ated prior to the amendment to the act of 1927 (35 *Del. Laws, c.* 85), so to amend its charter as to reclassify its stock in a way that would extinguish the right of a dissenting preferred stockholder to receive in cash the arrearages of dividends which had accumulated on his shares as stipulated in the charter. That decision appears to be precisely in point in the instant case, because the facts are parallel in principle. But the Supreme Court did not hold that the reclassifying amendment was void under any and all circumstances and as against the whole world, so to speak. It did hold that the amendment was a nullity as against a non-assenting stockholder. That is all it held. It is not to be conceived that if one hundred per cent of the preferred stockholders in the *Wilson & Co. Case* had voted in favor of the amendment, the court would, out of regard for some supposed public policy, have declared the amendment void. The matter was such as to be of concern to stockholders only, and if they were in unanimity upon it, no reason is perceived why any court should disturb itself about it.

The question of preferred dividends in a controversy such as this case presents, is one solely of contract right under the charter. It was so treated in the *Wilson & Co. Case,* where it was held that a majority of the stockholders could not deprive a dissenter of his stipulated rights, and if the corporation undertook to do so, its act was nugatory as to him. .

The rule is a general one that he who participates in or acquiesces in an action has no standing in a court of equity to complain against it, even though the act be against the permission of the law. It was so held in *Finch, et al., v. Warrior Cement Corp.,* 16 *Del. Ch.* 44, 141 *A.* 54, where one who had participated in an unlawful issue of stock was denied the right to complain against its issuance. The principle has been affirmed in many decisions and applied in a great variety of fact situations. As a general rule

equity will not hear a complainant stultify himself by complaining against acts in which he participated or of which he has demonstrated his approval by sharing in their benefits. This observation has added force where the acquiescence relates to rights of the assenting party that are contractual in nature, as is the situation in this case.

In 2 *Cook on Corporations,* (*8th Ed.*) *p.* 1673, it is said:

"A stockholder may be estopped from objecting to an amendment by his express or implied acquiescence therein. Any acts indicating an acceptance by him of the amendment bind him and bar his suit. Acquiescence may sometimes grow out of his silence or delay under circumstances that called on him to dissent if he so intended."

To the same general effect is the following from 13 *Fletcher, Cyclopedia of Corporations,* (*Perm. Ed.*) § 5862, *p.* 179:

"If a majority of the stockholders do or authorize an act as to which it is not within the power of the majority to bind the minority, but which would be valid if all consent, stockholders who do not take part may ratify the act, or may be estopped by acquiescence. * * * A stockholder cannot attack a wrongful or *ultra vires* act, where he has accepted pecuniary benefits thereunder, with knowledge of the facts. Acceptance of dividends resulting from the act or thing complained of has in several instances been held to work an estoppel."

In the matter of reclassification of stocks of the type here under review, it is to be supposed that some consideration in lieu of cash is given to the class of stockholders who were entitled to dividend arrearages, for the waiver by them of their right to cash payments. The new securities received in lieu of the old must in reason be regarded as acceptable to the holders of the old in liquidation of all capital and dividend rights theretofore belonging to them. No other sensible view of the matter can be entertained. He who accepts the new rights ought to be regarded as expressing an agreement to let go of the old ones.

The complainant in this case, however, under the head we are now considering, wishes to retain the old rights in part (to the extent of the old dividends) and to keep *in toto* all of the new rights given in lieu of all the old ones. His position does not appeal to me as tenable. As a matter of fact, he did not conclude to participate in the new plan of stock classification, until time had demonstrated that what he could receive in exchange for his old stock was worth more on the current market than was the redemption value of his old stock which included all the arrearages thereon. It looks very much as if the complainant was indulging in speculative delay.

Whether the complainant's conduct be considered as showing acquiescence or whether it be considered as showing estoppel, is a matter of words. It appears to me, so far as the present branch of the case is concerned, as more properly falling within the conception of acquiescence, to which is added an element often times present in estoppel, viz., the element of speculative waiting to see which of two courses it would be more to the profit of the complainant to adopt.

Having made his choice, I am of the opinion a court of equity should hold him to his selection.

Under this branch of the case, viz., the branch that seeks to secure to the complainant the arrearages on the old preferred stock, the complainant urges a point before mentioned, namely, that he labored under a mistake of law and that his acceptance of the new stock and of the sundry dividends was induced by that mistake. As I have already stated, however, that mistake is one that he cannot be relieved against.

One other point—one of appropriateness in pleading—should be noted. The complainant contends that as the defendant could have raised all the objections by demurrer

which it has raised by its plea, the plea should be overruled. This contention rests on the proposition that a plea cannot be made to serve the office of a demurrer. The proposition is a perfectly sound one. But this case presents a peculiar situation. It is this—the bill's allegations in the course of reciting the facts necessary to support what the complainant conceives to be a case in his behalf, proceeds to state facts which constitute material evidence of laches and acquiescence on his part. Thus the bill, unnecessarily I think, steps over into the field of fact lying on the defendant's side of the case. But in stating the facts that belong strictly to the defendant's case, the bill makes what the defendant is entitled to regard as an incomplete statement of the facts on which its contentions in defense rest. Now it is highly unreasonable to say that a complainant may in his bill make a partial presentation of the defendant's facts, and thereby compel the defendant, if his defense is the appropriate subject of a plea, to have the legal sufficiency of his defense tested by a demurrer. That would be compelling the defendant to submit his defense on an incomplete showing. What the defendant did in the instant case was to amplify the incomplete statement of the defendant's own defensive facts which the complainant had assumed to make in his bill, sufficiently to show them in a fullness adequate to the fair presentation of the defense. Rules of pleading should not be applied so as to enable a complainant to manœuvre the defendant out of his right to make full and fair use of the procedural tools which the law makes available to him. I do not mean, of course, to intimate that the solicitors for the complainant had any such manœuvring design in this case. I am simply pointing out what might be done if the contention of the complainant were accepted as a rule in the conduct of pleadings.

The plea will be sustained.