This case is before the court on a demurrer to the complainant's bill, on the ground of acquiescence or laches. Wilson Co., Inc., the defendant, amended its charter in February of 1935, reclassifying its stock and radically changing its financial setup. Bay Newfoundland Company, the complainant, is the equitable owner of 1700 shares of the defendant's old Class A. cumulative stock, and was the equitable owner of that stock on February 23rd, 1935, when the charter amendment took effect. Prior to that amendment, the defendant's charter provided for three classes of stock, which had been issued by it; a 7% cumulative preferred stock, having a par value of $100.00 per share, a Class A. stock, having no par value, on which dividends were to be paid at the rate of $5.00 per annum, cumulative from a certain specified date, and a common stock, also, having no par value. Prior to the amendment, the Class A. stock, also, had certain callable and liquidation rights, which will appear in the statement of facts preceding this opinion, but those provisions of the charter will not be repeated here. On February 23rd, 1935, the accrued and unpaid dividends on each share of the defendant's Class A. stock amounted to $21.25. At that time the defendant corporation, also, had a considerable surplus that could have been applied to the payment of such dividends, pursuant to the provisions of its old charter. Under the amendment to the defendant's charter, all of its Class A. stock, as well as the accrued and unpaid dividends thereon, were to be converted into common stock. The complainant's stock was not voted in favor of that amendment and it refused to make the exchange provided for by it, claiming, among other things, that the accrued and unpaid dividends thereon, at the time of the amendment, should be paid to it in cash. The complainant received no dividends, whatever, on its stockholdings after the 1935 amendment of the defendant's charter, but some dividends were paid on the common stock after that amendment took effect.
The general substantive right of the complainant to the payment of dividends on its Class A. stock, before any dividends could be paid on the common stock, was decided by the Supreme Court of this State in Keller et al. v. Wilson Co. Inc., Del. Ch., 190 A. 115. Thisis conceded by the defendant company.
While the 1935 amendment to the defendant's charter took effect on February 23rd of that year, the complainant's bill was not filed until February 19, 1938, and the defendant, therefore, claims that the complainant has lost its rights by delay in *Page 671 
attempting to enforce them. That is the sole question to be considered in this case.
[1, 2] The Statutes of Limitations, as such, are not binding on a Court of Equity, but unfair and prejudicial delay in bringing an action is not ordinarily permitted in that court. In the absence of some special circumstances, in determining whether the complainant's rights have been lost by laches, a Court of Equity will, perhaps, usually follow the analogy of the Statute of Limitations governing somewhat similar rights in a Court of Law (Wright et al. v. Scotton, et al.,13 Del.Ch. 402, 121 A. 69, 31 A.L.R. 1162; Garber v. Whittaker, Del.Ch. 2 A.2d 85); but whether that rule will be applied necessarily depends on the facts of the particular case. Scotton et al. v. Wright et al.,13 Del.Ch. 214, 117 A. 131.
[3, 4] Acquiescence and laches are cognate, but not correlative terms. They both spring from the cardinal rule that "he who seeks equity must do equity", but acquiescence, properly speaking, relates to inaction during the performance of an act, while laches relates to delay after the act is done. Hall v. Otterson, 52 N.J.Eq. 522, 28 A. 907; 2 Pom.Eq.Jur. (4th Ed.) § 965. Mere delay in taking action is not acquiescence, but, depending on the facts, it, of course, may in some cases be strong evidence of acquiescence. 2 Pom.Eq.Jur. (4th Ed.) § 965.
[5, 6] It seems that the equitable rule, with respect to laches, is not ordinarily based on the mere delay of a complainant in asserting his rights, but on delay that works a disadvantage to another, after notice of the invasion of such rights. Chase v. Chase, 20 R.I. 202, 37 A. 804; 4 Pom.Eq. Jur. (4th Ed.) p. 3418; Scotton et al. v. Wright et al.,13 Del.Ch. 214, 117 A. 131. When, therefore, a court sees negligent delay on one side, after notice, and injury therefrom on the other, it is usually a ground for the denial of equitable relief, on the ground of laches. Id. In Wright et al. v. Scotton et al., 13 Del. Ch. 402, 121 A.69, 72, 31 A.L.R. 1162, quoting from 4 Pomeroy's Equity Jurisprudence (4th Ed.) p. 1442, the Supreme Court said: "Where it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where, by his conduct and neglect, he has perhaps not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him, if the remedy were afterwards to be asserted in either of these cases, lapse of time is most material".
The court in that case, also, said: "Under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute of limitations at law; but, if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer period than that fixed by the statute, the Chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it".
[7] In its final analysis, therefore, the questions to be determined are whether, under the facts alleged, the complainant's delay in filing its bill would justify this court in reaching the conclusion that that company had acquiesced in the amendment to the defendant's corporate charter, even though such amendment were not binding on the complainant; or, at any rate, whether, because of such delay in enforcing its rights, the interests of the defendant, or of any of its stockholders, had been injuriously affected.
[8] Where laches or acquiescence clearly appears on the face of the bill, these defenses may be taken advantage of by demurrer. Bush et al. v. Hillman Land Co., et al., Del.Ch., 2 A.2d 133; Martin v. Martin, Del.Ch., 74 A. 864. This is not denied by the complainant.
But unless the very nature of the setup of a large corporation, with a tremendous outstanding stock issue, puts it in an entirely different class from an individual, as is contended by the defendant, I am unable to find any facts alleged in the bill that take this case out of the general rule laid down by the court in Wright et al. v. Scotton et al., supra.
[9, 10] Perhaps it may be said in general that when the ultra vires acts of a corporation are involved, and are of such a nature that they can be ratified, a dissenting stockholder, with notice, whose rights are affected by such acts, cannot ordinarily stand by in silence and unreasonably and unfairly delay action in order to determine whether the alleged improper acts would be to his ultimate advantage or disadvantage; this is certainly true if the rights *Page 672 
of others are in any way injuriously affected by such delay. Romer v. Porcelain Products, Inc., Del.Ch., 2 A.2d 75; Rabe et al. v. Dunlap et al., 51 N.J.Eq. 40,25 A. 959; Trounstine v. Remington Rand, Inc., Del.Ch., 194 A. 95; Gregory v. Patchell, 33 Beav. 595; Fraser v. Great West. Sugar Co.,120 N.J.Eq. 288, 185 A. 64; Union Fin. Corp. of Amer. v. United Inv. Sec. Corp. 18 Del.Ch. 146, 156 A. 220. Perhaps it may, also, be said that somewhat similar principles apply to an amendment to a corporate charter, which illegally attempts to deprive a nonconsenting stockholder, having notice of such amendment, of vested rights in certain accrued and unpaid dividends on his stock. Romer v. Porcelain Products, Inc., Del.Ch., 2 A.2d 75; Trounstine v. Remington Rand, Inc., Del.Ch., 194 A. 95. But it is not always easy to apply these principles to the facts.
In Romer v. Porcelain Products, Inc., supra, the court said: "A stockholder is barred from complaining against it [an amendment to the corporate charter within the prohibition of Keller et al. v. Wilson Co., Del.Ch., 190 A. 115] by the estoppel of his acquiescence or by circumstances showing laches in the assertion of his objection". [2 A.2d 76.]
In the same case the court, also, said: "Where action affecting numerous persons, though illegal, is susceptible of ratification, he who desires to object thereto owes some duty to the others to be diligent according as circumstances would suggest in taking his position in respect thereto".
This is a correct statement of the general rule, but the facts must justify its application in a particular case. That they did justify it in the Romer case is apparent, as though the complainants had ample notice of the charter amendment, they waited more than four and one-half years before filing their bill. They, also, waited, at least three and one-half years before notifying the corporation of their claim that it was invalid. A very different situation is presented here.
The following facts, not appearing in the statement preceding this opinion, and not heretofore referred to, were, also, alleged in the complainant's bill:
"On March 5, 1935, counsel for your Orator wrote to the defendant, stating that it considered the plan of recapitalization carried out through the said amendment of the defendant's certificate of incorporation to be unfair, oppressive and illegal and that counsel had been instructed to institute legal proceedings to declare it void, or, in the alternative, to recover damages for the fair value of its stock. On or about March 16, 1935, counsel for your Orator conferred with certain executive officers of the defendant with respect to the rights of your Orator and with a view to effecting a compromise or settlement of the dispute in controversy which had arisen between your Orator and the defendant with respect to the subject-matter of this Bill of Complaint, but the parties were unable to reach an agreement. In these efforts to settle the said controversy or dispute, your Orator acted jointly with one Tirzah P. Dunn. On April 19, 1935, the said Tirzah P. Dunn filed in the District Court of the United States for the District of Delaware her Bill of Complaint, as a holder of 500 shares of the Class A. stock of the defendant, complaining against the said amendment of the defendant's certificate of incorporation, and seeking, in her own right, substantially the relief sought in and by this Bill of Complaint. It was intended that the suit brought by the said Tirzah P. Dunn would fix and determine not only her rights in the premises, but the rights of your Orator, who was in all respects similarly situated to the said Tirzah P. Dunn in the premises. The said suit was brought in the name of Tirzah P. Dunn only for the sake of simplicity. Meanwhile, two suits challenging the legality of the said amendment of the defendant's certificate of incorporation had been brought in the Court of Chancery of the State of Delaware. On May 24, 1935, the Chancellor handed down opinions on demurrer adverse to the contentions made by the complainants in these two suits. An appeal to the Supreme Court of the State of Delaware was taken in one of the said suits (known as Keller v. Wilson Co., Inc.) to the January Term, 1936, of that Court. Your Orator was aware of the Chancellor's said opinions and of the taking and pendency of the said appeal. It was apparent that one question of extreme importance to the rights of your Orator and the said Tirzah P. Dunn would shortly be finally and authoritatively determined by the Supreme Court of the State of Delaware in the said case, and proceedings in the said Dunn case and otherwise on behalf of your Orator were delayed pending the decision of the said Court, which was handed down on November 10th, 1936, followed by the denial of a motion for reargument on February 19, 1937. The said *Page 673 
decision denied the right of the defendant to cancel the unpaid cumulative dividend rights of holders of the defendant's Class A. stock who did not consent thereto. Promptly thereafter, on February 23rd, 1937, efforts were again made by and on behalf of your Orator to settle and adjust the dispute between it and the defendant, which efforts were continued by correspondence and personal interviews until about September 24th, 1937, when they were abandoned as futile".
[11, 12] The complainant's rights are of a contractual nature, and cannot be disregarded by the defendant unless the facts alleged in the bill show that it lost such rights by acquiescence, or by laches; and that in either event it would be unjust and inequitable to permit the entry of a decree in the complainant's favor. In justification of its disregard of the complainant's rights, the defendant company claims that the very nature of a large corporation, involving, as it does, the rights and interests of many stockholders, required prompt action by the complainant for the protection of such rights. In fact, it apparently contends' that, as the complainant had notice of the contemplated amendment, action by it was necessary before that amendment had been acted upon by the corporation, or, certainly, shortly thereafter. But the facts of this case do not justify the application of such a strict rule. See Boardman v. Lake Shore Mich. Ry. Co., 84 N.Y. 157; and none of the foregoing cases cited by the defendant are inconsistent with this conclusion.
In Graff v. Williamsport Water Co. et al., 312 Pa. 255, 167 A. 341, facts, justifying the application of the rule of estoppel, also, appeared.
The bill was filed within three years after the defendant's charter was amended (see Sect. 5129 Revised Code of 1935), and it does not appear that either the corporation, or any of its stockholders, actually changed their position, or were, in any way, injured by the complainant's alleged delay in starting this action. The defendant had ample notice that the complainant claimed that the 1935 charter amendment was illegal, and if it saw fit to proceed under that amendment, notwithstanding the complainant's known attitude I do not see how the claim can be made that the complainant's rights are in any way affected by the application of the principles of laches or estoppel.
At the argument of the case, the complainant, in effect, conceded that the defendant's stock was listed on the New York stock exchange, and that there had been a moderate amount of trading in the new stock since February 23rd, 1935, when its charter was amended; but it did not appear what class of stock was traded in, whether the purchasers were ignorant of the complainant's rights, or, if they were, that their rights were seriously affected by its delay in bringing suit. As I view it, the complainant's rights are, therefore, governed by the general principles as to time, laid down in Wright et al. v. Scotton et al.,13 Del. Ch. 402, 121 A. 69, 31 A.L.R. 1162, supra, and are not barred by laches, as such. The defendant cites Penn Mut. Life Ins. Co. v. Austin,168 U.S. 685, 18 S.Ct. 223, 42 L.Ed. 626; and Mackall v. Casilear, 137 U.S. 556,11 S.Ct. 178, 34 L.Ed. 776, to the effect that the mere assertion of a claim, unaccompanied by any recognition of such claim by the other party, does not bar the defense of laches; but neither of those cases involved similar facts, as the bills were filed many years after the alleged causes of action arose.
Nor does it clearly appear from the facts alleged in the bill that the complainant acquiesced in the amendment to the defendant's charter, and thereby waived its rights against the defendant by reason of its delay in bringing suit. As I have already pointed out, it promptly questioned the validity of that amendment, and, almost immediately after its adoption by the defendant's stockholders, gave notice to the defendant that it intended to take action in the courts to test its legality. True, suit was not promptly brought, but there is nothing to clearly indicate any change in its position with respect to the amendment. While not a party to the Dunn suit, which was brought in the Federal Court for the District of Delaware, in April of 1935, the bill alleges that that suit was intended to determine its rights. The bill, also, alleges that the complainant knew of the pendency of the Keller suit, both in this court and in the Supreme Court, and that "proceedings in the said Dunn cause, and otherwise, on behalf of" the complainant "were delayed pending the decision" of that case.
After the final decision of the Keller case by the Supreme Court, on February 19th, 1937, efforts were again made by the complainant to settle its dispute with the defendant, *Page 674 
with respect to the validity of the 1935 amendment, and, though without result, such efforts were, in fact, continued until about September 24th, 1937; and this bill was filed on February 19th, 1938, or less than five months thereafter.
Whatever the facts may disclose at a later stage of this case, under the present circumstances I do not feel that it can be said, as a matter of law, that the complainant clearly intended to waive its rights against the defendant; or that the defendant, or anyone else, was in any way misled to its disadvantage by the delay in filing this bill.
The demurrer to the complainant's bill is, therefore, overruled.
 *Page 75