DANIEL S. FRANK, LEOPOLD NEWBORG, FRANK J. G. WEINBERG, HERBERT J. MARX and F. A. MORGAN EASTON, the said Newborg, Weinberg, Marx and Easton being co-partners trading as NEWBORG & COMPANY,

*vs.*

WILSON & CO., INC., a Delaware Corporation.

*New Castle, Nov. 8, 1939.*

*William Prickett,* for complainants.

*Hugh M. Morris, Edwin D. Steel, Jr.,* and *S. Samuel Arsht,* for defendant.

THE CHANCELLOR: This case is before this court on a demurrer to the complainants' bill, on the ground of acquiescence or laches. Wilson & Co., Inc., the defendant, amended its certificate of incorporation at a stockholders' meeting, held on February 19th, 1935. That amendment was filed in the office of the Secretary of State on February 23rd, of that year, and, therefore, became effective on that date. By that charter amendment, Wilson & Co. radically changed its financial setup by reclassifying its stock and capitalizing its surplus and undistributed profits. Under the plan adopted, the provisions, relating to the old class A cumulative stock, were stricken from the charter, and that stock was to be exchanged for common stock, on the basis of five shares of the latter stock for each share of class A stock, together with the accrued and unpaid dividends thereon. For some time prior to the charter amendment, Frank, one of the complainants, had been the equitable or real owner of 405 shares of the class A cumulative stock, issued by the defendant company, though that stock stood on its books in the name of Newborg & Company, the other complainant, a brokerage house in the City of New York. At the time of the charter amendment, though the defendant company had a surplus in excess of $8,000,000, the accrued and unpaid dividends on each share of its class A stock amounted to $21.25. A substantial portion of the undistributed corporate surplus was fairly applicable to the payment of such accrued dividends, pursuant to the provisions of its charter, under which the dividend rights of the class A stock were merely junior to the preferred stock. Notice of the contem-

plated charter amendment of February 19th, 1935, was duly received by the complainants, and by letters dated January 15th and February 6th, 1935, the defendant company was notified that the Frank shares were to be voted against the amendment; and they were, in fact, so voted at the stockholders' meeting held on that date. The proposed amendment was, however, carried by an overwhelming vote, but Frank never actually exchanged his class A stock for common stock certificates. As the owner of class A stock, issued by the defendant company, on which there were accrued and unpaid dividends, Frank had certain equitable rights of a contractual nature in the undistributed earnings of the corporation which could not be taken away by the charter amendment of February 19th, 1935, without his consent. This is necessarily conceded by the defendant company. *Keller, et al., v. Wilson & Co., Inc.,* 21 *Del. Ch.* 13, 190 *A.* 115; *Bay Newfoundland Co. v. Wilson & Co., Inc., ante p.* 30, 4 *A. 2d* 668.

But, when the facts justify it, even a stockholder, who originally objected to a charter amendment, capitalizing the corporate surplus, and whose stock was voted against such amendment, may be barred from asserting his rights against the corporation "by the estoppel of his acquiescence or by circumstances showing laches in the assertion of his objections." *Bay Newfoundland Co. v. Wilson & Co., Inc., ante p.* 30, 4 *A. 2d* 668, 672, quoting from *Romer v. Porcelain Products, Inc.,* 23 *Del. Ch.* 52, 2 *A. 2d* 75, 76.

This court has heretofore pointed out that both acquiescence and laches spring from the elementary rule that "he who seeks equity must do equity." *Bay Newfoundland Co. v. Wilson & Co., Inc., ante p.* 30, 4 *A. 2d* 668, 671.

What constitutes laches, when it will ordinarily be a defense in a court of equity, and in the absence of particular circumstances, its usual relation to the analogous statutory period of limitations, applied by courts of law, have been

frequently considered by this court, and will not be reconsidered in detail here.

Speaking generally, however, in most cases when the bill is filed within the time prescribed by the statute governing somewhat similar actions at law, "the equitable rule, with respect to laches, is not ordinarily based on the mere delay of a complainant in asserting his rights, but on delay that works a disadvantage to another, after notice of the invasion of such rights." *Bay Newfoundland Co. v. Wilson & Co., Inc.*, ante p. 30, 4 *A*. 2d 668, 671.

It has been said by eminent authority that acquiescence does not accurately express any known legal defense, and that it is no more than "quiescence under such circumstances as that assent may be reasonably inferred from it, and is no more than an instance of the law of estoppel by words or conduct." *De Bussche v. Alt*, L. R., 8 *Ch. Div.* 286; *Duke of Leeds v. Amherst*, 2 *Phil. Ch.* 117, 41 *Eng. Repr.* 886; 2 *Pom. Eq. Jur.*, (*4th Ed.*) § 965, *note*. In other words, as was pointed out in *Lowndes v. Wicks*, 69 *Conn*. 15, 36 *A*. 1072, 1079, "assent is a necessary inference from acquiescence, and estoppel was [is] the necessary consequence of assent."

In 2 *Pomeroy's Equity Jurisprudence*, (*4th Ed.*) § 965, the author says:

"While confirmation implies a deliberate act, intended to renew and ratify a transaction known to be voidable, acquiescene is some act, not deliberately intended to ratify a former transaction known to be voidable, but recognizing the transaction as existing, and intended, in some extent at least, to carry it into effect and to obtain or claim the benefits resulting from it."

See, also, *Woodruff v. North Bloomfield, etc. Min. Co.*, (*C. C.*) 18 *F*. 753, 790; *Trounstine v. Remington Rand, Inc.*, 22 *Del. Ch.* 122, 194 *A*. 95, 99.

In the latter case, the Chancellor pointed out that "as a general rule equity will not hear a complainant stultify himself by complaining against acts * * * of which he

has demonstrated his approval by sharing in their benefits." He, also, added that this was particularly true "where the acquiescence relates to rights of the assenting party that are contractual in nature." In fact, in most cases where any of the elements of estoppel are present, in a material degree, any act, fairly indicating an acceptance by a stockholder of a charter amendment alleged to be in violation of his rights, will bar his suit; and, perhaps, acquiescence may sometimes grow out of silence when it is clearly apparent that circumstances would fairly require a dissenting stockholder to make his objections known. 2 *Cook on Corp.*, 1673.

While acquiescence is akin to laches, the two doctrines are by no means the same (*Bay Newfoundand Co. v. Wilson & Co., Inc., ante p.* 30, 4 *A.* 2d 668) ; a much more definite apparent assent to the acts complained of being required in acquiescence than in laches. *Lux v. Haggin*, 69 *Cal.* 255, 4 *P.* 919, 10 *P.* 674; 1 *Bouv. Law Dict.*, (*Rawles Third Revision*) *Acquiescence, page* 114; 1 *C. J.* 906. It is true that acquiescence is a species of waiver (2 *Bouv. Law Dict.*, (*Rawles Third Revision*) *Waiver, page* 3417), which has been defined by the law court to be the intentional relinquishment of a known right, or such conduct as warrants an inference of such an intent (*Jones v. Savin*, 6 *Boyce* (29 *Del.*) 68, 96 *A.* 756; *Id.*, 6 *Boyce* (29 *Del.*) 180, 97 *A.* 591; *O'Neill v. Cooles*, 3 *W. W. Harr.* (33 *Del.*) 541, 140 *A.* 648) ; and, like other questions of intent, waiver has been usually treated in that court as a question of fact, for a jury to determine, but in this court it does not follow that the law of estoppel has no necessary relation to acquiescence, when considered as such.

In equity, in order for acquiescence to operate as a bar to a complainant's action, knowledge of the act complained of is necessary, but when he freely does something which fairly and reasonably amounts to a recognition of the validity of that act, and which is inconsistent with its subsequent repudiation, a real conscious intent to approve or ratify

it is not essential to that defense. 2 *Pom. Eq. Jur.*, (*4th Ed.*) .§ 965.

Applying these principles, it has been said that the acceptance of dividends on stock, issued pursuant to a charter amendment, alleged to be *ultra vires* so far as the complainant is concerned, will sometimes operate as an estoppel. 13 *Flet. Ency. Corp.*, (*Perm. Ed.*) 179.

Standing alone, mere delay in taking action is not necessarily acquiescence, but, depending on the facts, it may of course, in some cases, be strong evidence of it. *Bay Newfoundland Co. v. Wilson & Co., Inc., ante p. 30, 4 A. 2d* 668; 2 *Pom. Eq. Jur.*, (*4th Ed.*) § 965.

When, and only when, either laches or acquiescence clearly appears on the face of the bill, these defenses may be taken advantage of by demurrer (*Bay Newfoundland Co. v. Wilson & Co., Inc., ante p. 30, 4 A. 2d* 668) ; and it is contended that this case comes within that rule.

The complainants' bill was filed January 2nd, 1938, or about two years and eleven months after the charter amendment of February, 1935, had taken effect; its allegations were fully set out in the statement of facts preceding this opinion, and I shall repeat only such portions of them as I think necessary.

The bill, among other things, alleges:

1. That between February 26th, 1935, and December 1st; 1937, the defendant company declared and paid eleven dividends on its common stock, at the rate of 12½¢ per share, and checks for all of these dividends, clearly showing on their faces what they were for, were sent to and cashed by the complainants; that these checks amounted to the total sum of $2784.43, and represented dividends on the precise number of shares of common stock to which the complainants would have been entitled had they actually exchanged their stock pursuant to the charter amendment

of February 19th, 1935, and that the total sum paid out by the defendant company in common stock dividends during this period, including the payments to the complainants, exceeded $2,500,000.

2. That on March 28th, 1935, and therefore after the dividend on common stock payable June 1st of that year, had been declared, the defendant company wrote Newborg & Company stating that a dividend had been declared, and the amount of it, and that it would facilitate the receipt of dividends on their stock if they would exchange their class A stock certificates for common stock certificates before that date, and enclosed a transmittal blank for their use; that on May 22nd, 1935, Newborg & Company wrote the defendant inquiring whether the common stock dividend, payable June 1st, would be paid to the holders of "the class A stock still outstanding"; that on May 29th, 1935, the defendant company replied that the old class A shares would be treated "as reclassified," according to the recapitalization plan; that the letter of the defendant company, enclosing the common stock dividend check, payable June 1st, 1935, contained a notice calling attention to the fact that the stock of the complainants had not been exchanged for common stock, and stated that as the company felt that "sufficient time" had not elapsed "between the meeting and the record date of the first dividend payment to permit the exchange of all shares" it had "decided to treat all shares as having been converted, and to pay the dividend to all class A stockholders on the basis of the change by the reclassification, namely five shares of common for each share of class A," and in the same letter the company recommended that complainants' stock be exchanged "for the purpose of facilitating receipt of your subsequent dividends."

3. That on July 9th, 1936, or about one year later, the defendant company again wrote Newborg & Company calling their attention to the fact that they had not exchanged their class A stock certificates for common stock, and

that the certificates which they held did not properly represent what "you own," and suggested that they make the exchange promptly; that on October 21st, 1936, Wilson & Co., also, wrote Newborg & Company:

"Strictly speaking, our stockholders would not have been entitled to receive the dividends that have been paid since February 19th, 1935 until their old shares were surrendered and the new shares issued, but we have paid the dividends and have treated the old shares as having been exchanged. * * * it is entirely possible the directors may decide to discontinue payment of dividends to those stockholders who have not exchanged their shares," and in the same letter the statement was, also, made that the defendant company assumed the failure of Newborg & Company to send in its old certificates was due to an oversight.

Applying the principles above stated to the facts alleged, it is apparent that the claim of the complainants, that they still stand in the position of class A stockholders because they never exchanged their certificates for common stock, is wholly inconsistent with their prior acts in accepting and cashing numerous dividend checks on that stock. After having repeatedly accepted benefits from the charter amendment objected to, it would be unfair to the defendant company to permit the complainants to recover in this action. No real question of intent is involved, and the equities of the case so clearly appear from the admitted facts that it can be decided on demurrer. The act complained of is the charter amendment of February 19th, 1935, capitalizing the corporate surplus and striking out any provision relating to the class A stock; and the complainants objected to and voted their stock against that amendment. The defense relied on is based on subsequent acts, but it is unnecessary to determine whether, in strictness, the decision should be based on laches or acquiescence (see *De Bussche v. Alt, L. R., 8 Ch. D.* 286; *Bay Newfoundland Co. v. Wilson & Co., Inc.,*

*ante p.* 30, 4 *A.* 2*d* 668; *Woodruff v. North etc. Min. Co.*, (*C. C.*) 18 *F.* 753, 790; 2 *Pom. Eq. Jur.* (*4th Ed.*) § 965) as sufficient facts, injuriously affecting the defendant company and barring the complainants' right of recovery, appear.

In addition to the facts above referred to, the bill alleged that on or about April 12th, 1935 the complainants learned of the *Saperstein* suit against the defendant company, which involved somewhat the same question as *Keller, et al., v. Wilson & Co., Inc.*, 21 *Del. Ch.* 391, 190 *A.* 115, and on that date employed Mr. Saperstein, who was an attorney-at-law, to represent them in their controversy with the defendant, relating to the 1935 amendment of its charter; that on or about November 13th, 1936, the complainants learned of the decision by the Delaware Supreme Court of the *Keller* case, and then employed the solicitor who represented the complainants in that action to represent them; that on May 24th, 1937, the complainants asked leave of this court to intervene in that case, and that application was refused on August 4th, 1937. *Keller, et al., v. Wilson & Co., Inc.*, 21 *Del. Ch.* 391, 194 *Atl.* 45.

None of these allegations affect the conclusion that, by reason of other facts alleged, the complainants have no right of action against the defendant company.

The demurrer is, therefore, sustained, and an order will be entered in accordance with this opinion.

Note. After entry of an order in accordance with the foregoing opinion, upon motion of solicitors for the defendant the bill of complaint was dismissed. On appeal the decree of the Chancellor was affirmed by opinion appearing in 32 *A.* 2*d* 277, which will be reported in a subsequent volume of Delaware Chancery Reports.