JEANNE GOTTLIEB,

*vs.*

H. HARPER McKEE, RICHARD B. HAND, A. FAISON DIXON, ALBERT
D. BROKAW, ARTHUR G. LOGAN, LEONARD G. HUNT, CHARLES
R. LEONARD, JOSEPH V. McCABE, VENEZUELA SYNDICATE, INC.,
a corporation of the State of Delaware, and NORTHWEST NAT-
URAL GAS COMPANY, a corporation of the State of Delaware.

*New Castle, July 7, 1954.*

*Robert C. Barab,* Wilmington, and *Leonard I. Schreiber,* New York City, for plaintiff.

*Edwin D. Steel, Jr.,* of the firm of Morris, Steel, Nichols & Arsht, of Wilmington, for defendants Venezuela Syndicate, Inc., H. Harper McKee, Richard B. Hand, A. Faison Dixon, Albert D. Brokaw, Leonard G. Hunt, and Charles R. Leonard.

*Arthur G. Logan,* of the firm of Logan, Marvel & Boggs, of Wilmington, for Northwest Nat. Gas Co., and *pro se.*

BRAMHALL, Vice Chancellor: This is a stockholder's derivative action brought by plaintiff on behalf of Venezuela Syndicate, Inc., hereinafter called "Syndicate", against certain directors of Syndicate and others charging them with appropriating unto themselves a corporate opportunity of Syndicate in connection with an investment made by defendants in Northwest Natural Gas Company, hereinafter called "Northwest". Those defendants who are directors of Syndicate are also charged with mismanagement of Syndicate in connection with an investment made by Syndicate in the securities of Northwest. Defendants moved for summary judgment and to dismiss. The individual defendants will hereinafter be designated as "defendants".

The corporate opportunity of which complaint is made involved the participation of the defendants in the organization of Northwest for the purpose of having it engage in the transportation of natural gas from Canada for use in the northwestern part of the United States and Canada. It is alleged in the complaint that the enterprises for which Northwest was organized was within the field of activities of Syndicate; that the five defendants who were directors of Syndicate made an investment in the capital stock of Northwest without first making the same available to Syndicate; that Syndicate was persuaded to make an investment in Northwest on terms less advantageous than the investment made by defendants; that those defendants who were directors of Syndicate mismanaged Syndicate in connection with the investment which Syndicate made in Northwest. Plaintiff demands that the defendants account to Syndicate for this alleged breach of trust and for damage sustained by Syndicate in consequence of such improper and unlawful acts.

Defendants have filed a motion for summary judgment on the ground that there is no genuine issue as to any material fact and that

the defendants are entitled to a judgment of dismissal as a matter of law. Defendants have also filed a motion to dismiss on the ground that plaintiff has failed to comply with the direction of this court for the production of certain income tax returns.

The motion for summary judgment is based upon certain affidavits. It will be necessary in the consideration of this motion to set forth in substance the important allegations of fact contained therein.

On April 6, 1948 a notice was sent to all stockholders of Venezuela of an annual meeting to be held on April 20th. Enclosed with the notice was a proxy statement giving a statement of the transaction complained about by plaintiff in her complaint and a form of proxy. The circumstances of the organization of Northwest and the purpose of its organization are fully set forth in this statement. The investment of the defendants in Northwest and also the investment of Syndicate is also fully stated. In addition, Syndicate, prior to the annual meeting, filed a report with the Securities and Exchange Commission and also with the American Stock Exchange, setting forth the circumstances of the transaction and the interest of the defendants therein. Plaintiff, after consulting with her husband, who is a New York lawyer, signed the proxy sent to her and returned it to Syndicate.

At the annual meeting of stockholders of Syndicate on April 20, 1948, the investment of Syndicate in Northwest was discussed at length, after which the following resolutions were adopted:

"Resolved, that the action of the officers and directors of this corporation in making the investment in securities of Northwest Natural Gas Company, as set forth in the Proxy Statement which this corporation mailed to all stockholders of record on February 10, 1948, be and the same hereby is ratified and approved;

"Further resolved, that this corporation shall take no action to impose a trust on the shares of stock of Northwest Natural Gas Company acquired by Messrs. Brokaw, Dixon, McKee, Hand and Logan, as set forth on page 2 of the Proxy Statement for this meeting as it is the belief of this meeting that the acqui-

sition of said shares by said parties was not a corporate opportunity of this corporation."

These resolutions were adopted by a total vote of 661,324 shares in favor of and 7,250 shares against. The shares of plaintiff were voted in favor of the resolutions.

The certificate of incorporation of Syndicate at the time of its organization and also at the time of the meeting of the stockholders contained the following resolution:

"Article Thirteenth.

"In the absence of actual fraud, no contract or other transaction between the corporation and any other corporation and no act of the corporation shall in any way be affected or invalidated by the fact that any of the directors of the corporation are pecuniarily or otherwise interested in, or are directors or officers of, such other corporation. In the absence of actual fraud, any director individually, or any firm of which any director may be a member, may be a party to, or may be pecuniarily or otherwise interested in, any contract or transaction of the corporation, provided that the fact that he or such firm is so interested shall be disclosed or shall have been known to the board of directors or a majority thereof, and any director of the corporation who is also a director or officer of such other corporation or who is so interested may be counted in determining the existence of a quorum at any meeting of the board of directors of the corporation which shall authorize any such contract or transaction, and may vote thereat to authorize any such contract or transaction, with like force and effect as if he were not such director or officer of such other corporation or not so interested.

"Any contract, transaction or act of the corporation or of the directors or of any committtee which shall be ratified by the holders of a majority of a quorum of the stockholders at any annual meeting, or at any special meeting called for such purpose, shall, in so far as permitted by law, be as valid and as binding as though ratified by every stockholder of the corporation."

The defendants contend as to the motion for summary judgment: (1) that under the provisions of Article Thirteenth of the certificate of incorporation of Syndicate defendants were permitted to invest in the securities of Northwest irrespective of any corporate opportunity Syndicate might otherwise have had to make the investment; (2) that the transactions complained of by plaintiff were ratified by the stockholders of Syndicate at the annual meeting in 1948; (3) that plaintiff's stock was voted to ratify the transactions of which she now complains.

Plaintiff asserts that the effect of the resolutions adopted by the stockholders of Syndicate was to make a gift to defendants of Syndicate's cause of action against them. Plaintiff says, citing *Gottlieb v. Heyden Chemical Corp.*, 33 *Del.Ch.* 177, 91 *A.2d* 57, that such a gift of corporate assets is illegal and that the only effect of such purported ratification by stockholders is to shift the burden from defendants who would sustain the transaction to the plaintiff to prove its unfairness. As I view the questions raised by the parties, they can be decided by the determination of the question as to whether or not there was any gift of any corporate opportunity by Syndicate to defendants. If there was a gift of corporate assets, the ratification by the stockholders constituted nothing. *Kerbs v. California Eastern Airways, Inc.*, 33 *Del.Ch.* 174, 91 *A.2d* 62, 34 *A.L.R.2d* 839.

The resolution in question ratified and approved the action of the officers and directors of Syndicate "in making the investment in securities of Northwest as set forth in the proxy statement" and in deciding that no action should be taken to impose a trust on the shares of stock held by defendants in Northwest on the ground "that the acquisition of said shares by said parties was not a corporate opportunity of this corporation". Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests. While technically not trustees, they stand in a fiduciary relation to the corporation and its stockholders. *Bovay v. H. M. Byllesby & Co.*, 27 *Del.Ch.* 381, 38 *A.2d* 808, 174 *A.L.R.* 1201. The rule that requires an undivided and unselfish loyalty to the corporation demands that there shall be no conflict between duty and self-interest. *Guth v. Loft, Inc.*, 23 *Del.Ch.* 255, 5 *A.2d* 503. If an

officer or a director of a corporation, in violation of his duty as such, acquires gain or advantage for himself, the law charges the interest so acquired with a trust for the benefit of the corporation and its directors while it denies to the betrayer all benefit and profit. *Guth v. Loft, Inc., supra.* However, when a business opportunity comes to a corporate officer or director in his individual capacity rather than his official capacity, and the opportunity is one which, because of the nature of the enterprise, is not essential to his corporation, and is one in which it has no interest or expectation, the officer or director is entitled to treat the opportunity as his own, and the corporation has no interest in it, if, of course, the officer or director has not wrongfully embarked the corporation's resources therein. *Guth v. Loft, Inc., supra.* The test seems to be whether there was a specific duty on the part of the officer or director sought to be held liable to act or contract in the particular matter as the representative of the corporation. *Guth v. Loft, Inc., supra.* The question is whether the opportunity of defendants was so closely associated with the existing business activities of Syndicate and so essential thereto as to bring the transaction within that class of cases where the acquisition of the property would throw the corporate officer purchasing it into competition with his company. See *Guth v. Loft, Inc., supra.*

The determination of whether or not there has been in any given situation a gift of corporate assets does not rest upon any hard and fast rule. It is largely a question of fact. *Guth v. Loft, Inc., supra.* See 3 *Fletcher, Cyclopedia of Corporations, (Perm.Ed.) Sec.* 862. The affidavits filed in this case do not disclose the circumstances under which defendants are alleged to have appropriated a corporate opportunity of Syndicate. There is only the bare allegation that Northwest was incorporated for the purpose of providing transportation of natural gas from wells in the northwestern part of this country and in Canada. It is also shown that Syndicate is engaged in a similar field. Beyond the naked allegations, however, no information is furnished relative to the circumstances under which the alleged appropriation of a corporate opportunity occurred. Until such evidence is presented I can form no conclusion with reference thereto. Since I cannot at this time determine the question of whether or not

there has been a gift of the assets of Syndicate to the defendants, and since the question of the right of stockholders to ratify the action of Syndicate depends upon my determination in that respect, the question of whether or not there has been a legal ratification by the stockholders of Syndicate in the investment of Syndicate in North-west and in the waiving of any action against defendants on behalf of Syndicate, cannot be determined until the facts have been fully presented.

■ Is plaintiff estopped from bringing this action by reason of the fact that her stock was voted in favor of the resolution? It is apparently not disputed that plaintiff either knew or had a full opportunity of knowing all of the facts surrounding this transaction. They were fully set forth in the proxy statement and in the statement in compliance with regulations of the Securities Exchange Commission and were of record on the American Stock Exchange in New York City. She sought the advice of her husband, a lawyer of New York City, relative to the proxy and after obtaining his advice sent her proxy to be voted by the management of Syndicate. It was voted in favor of the resolutions. But plaintiff says that she is not bound by such vote inasmuch as she was not given notice of the fact that the resolutions ratifying the actions of defendants were to be voted upon at that meeting. The meeting was an annual meeting of the stockholders and it was not necessary that advance notice of the proposed resolutions be set forth. *Gow v. Consolidated Coppermines Corporation,* 19 *Del.Ch.* 172, 165 *A.* 136. The proxy was a general proxy. It authorized the attorneys therein mentioned to vote upon all matters coming up at the meeting with all the powers of the signer of the proxy. Unquestionably the holders of such a proxy would be permitted to vote upon this question at such a meeting.

But the question of whether or not plaintiff should be estopped from proceeding with this action by reason of the fact that her stock was voted in favor of the resolutions poses another question. The management did not contemplate that such a question would be voted upon. Indeed, plaintiff was advised in the notice of the meeting that the management did not contemplate bringing up any other questions

for determination. It is therefore fair to assume that plaintiff had no such knowledge at the time of the execution and delivery of the proxy that this resolution would be presented.

The rule is a general one that he who participates in or acquiesces in an action has no standing in a court of equity to complain against it. Equity will not hear a complainant stultify himself by complaining against acts in which he participated or of which he has demonstrated his approval by sharing in their benefits. *Trounstine v. Remington Rand, Inc.,* 22 *Del.Ch.* 122, 194 *A.* 95. See 13 *Fletcher, Cyclopedia of Corporations, (Perm.Ed.) Sec.* 5862, *p.* 209. However, it is essential to the doctrine of estoppel that the party sought to be estopped should have had the means of knowing the facts or have been in such a position that he ought to have known them. *Ainscow v. Alexander,* 1944, 28 *Del.Ch.* 545, 39 *A.2d* 54. See also cases cited in 19 *Am.Jur., Estoppel, Sec.* 49, *p.* 648. It is true that the meeting was an annual meeting and that the proxy was a general proxy entitling the holders thereof to vote the same upon all questions which might arise at the meeting. However, since plaintiff had no knowledge of the fact that the resolution in question was to be presented and was informed that the management of Syndicate intended to present no other items of business at the meeting, she is not estopped from asserting any right which she may have had relative thereto. If this were not so, holders of stock would be much more reluctant to permit their stock to be voted by proxy at an annual meeting of stockholders, since they would otherwise be prevented from raising any question as to any matter at all which might be legally presented at an annual meeting of stockholders.

Defendants rely on my opinion dated October 14, 1953 in the case of *Elster v. American Airlines, supra* p. 94, 100 *A.2d* 219. In the *Elster* case plaintiff knew of the existence of the stock option plan and that it was to be voted on at the meeting of stockholders. She was either advised or had the means of ascertaining every pertinent fact with reference thereto. In the instant case, plaintiff not only knew nothing about the fact that the resolutions were to be submitted to the stockholders, but she was led to believe that the management

would not bring any further business to the attention of the stockholders at that meeting. If plaintiff had known of the fact that the resolutions were to be submitted to the stockholders, then under the decision in the *Elster* case she would have been estopped from later objecting thereto. Since she did not know about the resolutions being offered, she is not bound thereby.

For the reasons given, I conclude that defendant's motion for summary judgment should be denied.

■■ Defendants are moving to dismiss this action by reason of the failure of plaintiff to produce at the request of defendants certain income tax returns. Although the order for their production was made on November 10, 1953, they have as yet not been produced. There is nothing before me to explain the failure of plaintiff to produce such returns, nor am I given any information as to when they will be produced. It is also not clear as to whether or not the failure of plaintiff to produce them at this time is due to her refusal or negligence or because of inability on her part to obtain copies of the same from the office of the Bureau of Internal Revenue. Under the present state of the record I would not therefore desire to make an order dismissing this action for failure of the plaintiff to comply with the order of this court. However, I feel that the burden is upon the plaintiff to explain satisfactorily her failure to comply. Should either party so desire, I should be glad to consult with the parties and make such order with reference to this motion which I may deem to be proper and fitting after a disclosure of all the circumstances.

Order on notice in accordance with this opinion.