**I.V. SERVICES OF AMERICA, INC., Plaintiff, Appellant,**

v.

**INN DEVELOPMENT & MANAGEMENT, INC., et al., Defendants, Appellees.**

No. 98–1696.

United States Court of Appeals, First Circuit.

Heard Jan. 5, 1999.

Decided June 28, 1999.

Francis A. Miniter with whom Daniel S. Fabricant, William D. Gillis and Miniter & Associates were on brief for appellant.

Edward S. Rooney with whom Eric P. Finamore, Patrick J. Riley and Riley, Burke & Donahue were on brief for appellees.

Before SELYA, Circuit Judge,
CAMPBELL, Senior Circuit Judge, and
LYNCH, Circuit Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

This appeal concerns a demand for payment for medical services provided to Shelia Daly, a former employee of the Sheraton Hotel in Mansfield, Massachusetts, by Daly's medical care provider, appellant I.V. Services of America, Inc. ("I.V. Services"). I.V. Services sued Daly's employer and the administrator of its employee health benefit plan in the district court, seeking payment under the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1001 et seq. The district court dismissed on the ground that the suit was barred by the statute of limitations, finding that I.V. Services waited, without justification, over five years from the time its action accrued before bringing suit. I.V. Services appeals, claiming the district court erred by refusing to apply equitable tolling principles to the limitations period. We affirm.

I.

During Daly's employment at the Sheraton Hotel in Mansfield, the hotel was owned and managed by Appellee Inn Development & Management, Inc. ("IDM"). In May 1988, IDM adopted a self-funded health benefit plan ("the Plan") for its employees and their dependents. Under the Plan, IDM was responsible for paying claims for medical care directly out of its own pocket and administering the Plan. Four months later, IDM contracted with Appellee Reliastar Life Insurance Company ("Reliastar")[1] via an Administrative Services Only Agreement ("the ASO agreement") to have Reliastar act as the claims processor for IDM's Plan. Reliastar's duties under the ASO agreement included various claims processing functions, such as claim investigation and record keeping.

In April 1990, Daly began receiving intravenous antibiotic treatment from I.V. Services for Lyme disease. Her treating physician recommended that the treatment continue for six to eight weeks. Prior to receiving treatment from I.V. Services, Daly signed a Benefits Assignment form ("the assignment") which authorized her medical insurance benefits to be paid directly to I.V. Services.

On May 14, 1990, Daly submitted a claim to Reliastar for her treatment at I.V. Services. Over the next several months, Reliastar requested, and ultimately received, information both from I.V. Services and Daly's treating physician in order to evaluate her claim. On October 15, 1990, Reliastar advised I.V. Services by letter that its review of Daly's claim was complete. Noting that Daly's claim for treatment from April 11 to August 14, 1990 totaled $48,266.65, Reliastar concluded that only two weeks of treatment were "medically necessary" as defined by the Plan. Reliastar further stated that it would reconsider its decision only if it received additional written evidence contradicting its conclusion.

In November 1990, Daly's treating physician wrote to Reliastar that he believed, based on medical literature, that more than two weeks of treatment was medically necessary for Daly's case of Lyme disease. This letter caused Reliastar to reconsider

1. At the time, Reliastar operated under the name Northwestern National Life Insurance Company. For convenience, we refer to the company as Reliastar.

its decision and authorize payment for an additional two weeks of treatment (for a total of four weeks). Reliastar advised Daly and her treating physician of its revised decision by letter dated April 19, 1991. The letter also stated that the claim for the balance of Daly's treatments from I.V. Services were still being denied as not "medically necessary." I.V. Services received $9,246.66 from the IDM Plan funds for four weeks of Daly's treatment.

On May 13, 1991, Mary Lou Nicoli, a regional claims representative for Reliastar, sent another letter to Daly, her treating physician, and IDM explaining why the remainder of her claim had been denied. This letter was sent as a "follow-up" to a telephone conversation five days earlier in which Daly had called Reliastar and asked Nicoli to explain Reliastar's decision.

On August 9, 1996, I.V. Services brought suit against IDM and Reliastar, citing the enforcement provisions of ERISA. These provisions entitle an ERISA plan "participant" or "beneficiary" to bring an action "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). IDM cross-claimed against Reliastar for contribution and indemnification, and moved for summary judgment against I.V. Services, arguing, among other things, that the claim was barred by the applicable limitations period. Reliastar in turn moved for summary judgment against I.V. Services and IDM.

The district court referred the motions to a magistrate judge for a report and recommendation. The magistrate recommended that I.V. Services' action be dismissed as against both IDM and Reliastar,

and that Reliastar's motion for summary judgment against IDM therefore be dismissed as moot. He determined that the applicable limitations period derived from the Plan's internal limitations clause, rather than from the statute of limitations applicable to ERISA actions or Massachusetts contract disputes. The Plan itself states that a claimant must request an appeal "at any time during the 60 day period following receipt of the notice of the denial of the claim" and commence legal action "within 3 years after the date proof of loss must be submitted" unless the "the Planholder's state requires longer time limits than these[.]" The magistrate further determined that, because Massachusetts law did not require a longer time period than did the Plan, the Plan's three-year internal limitations period controlled.

According to the magistrate, I.V. Services' action accrued at the time of the denial of benefits, which was, "at the latest, May 13, 1991"—the day Nicoli sent her "follow-up" letter explaining why Daly's claim had been denied.[2] The magistrate concluded that I.V. Services' action, filed on August 9, 1996, was "belated and ineffective," and he recommended that it be dismissed. The district court adopted the magistrate's "well-reasoned" report and recommendation, adding only a two-page summary to the magistrate's findings and conclusions. This appeal followed.

## II.

I.V. Services does not challenge the district court's decision to apply the three-year statute of limitations period specified in the Plan, nor the court's determination that its claim accrued, at the latest, on May 13, 1991. Rather, it argues that the

---

**2.** As noted, the Plan's limitations period provides that legal action must be commenced within three years of the date when a claimant submits "proof of loss," which in turn must be submitted within ninety days after the "date of loss." Doubtless because of the continuing nature of the treatment through August of 1990, and the continuance of the

insurance company's investigation through April of 1991, the magistrate determined that the triggering date for the statute of limitations was, "at the latest," May 13, 1991, when Reliastar clearly signaled its denial of the contested benefits. None of the parties has challenged this determination on appeal.

three-year period should be equitably tolled so as to permit the filing of Daly's complaint in 1996.[3] I.V. Services identifies three alternative bases for equitable tolling. First, it says that there was evidence that Daly never received a copy of the Plan, creating a factual issue as to whether she received appropriate notice of the Plan's three-year limitation period. Second, when I.V. Services and Daly requested a copy of the Plan from Reliastar, their requests were allegedly ignored or rebuffed. Third, it argues that the denial of claim letter that Daly received was deficient under applicable regulations, thus excusing her failure to comply with the three-year limitations period. Assuming, *arguendo*, that one or another of these points, if established, would equitably toll the running of the limitations period, I.V. Services has not sufficiently established any of them.

### A. Did Daly Receive a Copy of the Plan?

■ Under ERISA, the administrator of each employee benefit plan must furnish to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan a summary plan description that is "written in a manner calculated to be understood by the average plan participant, and [is] sufficiently accurate and comprehensive to reasonably appraise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). I.V. Services argues that IDM and Reliastar failed to comply with this requirement by not furnishing Daly with a copy of the Plan. Although not expressly stated, the implication is that it would be inequitable to apply the Plan's internal limitations period to someone who had no opportunity to learn of it.

■ As the party seeking to invoke the doctrine of equitable tolling to avoid application of the limitations period, I.V. Services has the burden of proving that Daly never received a copy of the Plan. *See Catrone v. Thoroughbred Racing Ass'ns of North America, Inc.*, 929 F.2d 881 (1st Cir.1991) (citing *Franklin v. Albert*, 381 Mass. 611, 411 N.E.2d 458, 463 (1980)) ("The plaintiff bears the burden of presenting facts sufficient to take the case outside the statute of limitations."). Attempting to satisfy this burden, I.V. Services points to Daly's deposition testimony. The relevant testimony is as follows:

Q: Let me ask you now, at the time that you started working or at some time when you worked at the Sheraton, do you remember ever getting some written information about the health insurance that you—that was covering you from the people at Sheraton?

A: I—I don't remember. I don't remember specifically. If you want me to remember a detailed time, I don't remember.

Q: No, no, my question is just whether you remember getting—

A: Usually when we had different insurances and they would change or whatever, they would usually have like a

---

3. We disagree with IDM's contention that I.V. Services lacked standing to bring the present suit. *See Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 693 (4th Cir.1989) (because standing is a jurisdictional issue, court should normally consider that question first). In *City of Hope National Medical Center v. Healthplus, Inc.*, 156 F.3d 223 (1st Cir.1998), a panel of this Circuit held that a health care provider under an ERISA employee welfare benefit plan may acquire derivative standing as an assignee of rights from one who has been specifically granted standing by ERISA. Although the district court did not have the benefit of this decision at the time, it ruled that I.V. Services did indeed have standing to bring its claim. IDM now contends that the Benefits Assignment Form only assigned to I.V. Services the right to receive payments, not her other rights, including the right to file suit. As the *City of Hope* panel stated, however, this "wrongly conflates two distinct inquiries." *Id.* at 228. To have standing, I.V. Services need only have a "colorable claim" that it is Daly's assignee, and the Benefits Assignment Form here easily clears this low hurdle.

meeting and talk to us about it or they would give us literature on it. Usually that's how it would work.

Q: Let me show you this document, which is Exhibit 18 at Maureen Teachman's deposition [the Plan], and just ask you whether you ever recall seeing that document before.

A: I don't know, this is kind of big. I don't know if I recall this.

Q: Okay.

A: You know? I do recall IDM Development & Management, Inc., I do recall that. Because that was one of the companies that was involved at the Sheraton within the ten years or whatever years I worked there.

Q: Okay. And but as you sit here today, you don't know one way or the another whether you saw that document?

A: You know, I'd imagine—I would imagine. Yeah, I don't recall.

Q: Just want to know what you remember.

A: Yeah. It's just like I said, we had so many people—you know, I would get what I was supposed to get, you know, and that's it.

The magistrate characterized this testimony as "equivocal, at best" and stated: "If anything, Daly's testimony supports an assumption that she received a copy of the Plan during her employment with IDM." I.V. Services interprets the exchange differently, claiming that only two inferences are possible from this testimony—either Daly never saw the Plan before or she could not remember if she had—and it is entitled, as the party opposing a motion for summary judgment, to the more favorable of those two inferences.

■ I.V. Services is correct insofar as it argues that it is entitled to the benefit of all reasonably drawn inferences. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). But the only reasonable reading of Daly's testimony is that she did not recall wheth-er she ever received a copy of the Plan. Her mere lack of recollection does not suffice to create an issue of fact over whether or not she received a Plan copy. When asked if she "remember[ed] ever getting some written information about the health insurance[,]" she responded that she did not remember specifically. Then, when shown the Plan itself and asked if she "ever recall[ed] seeing that document before" she testified that she "would imagine" that she did but did not actually recall.

Absent from Daly's testimony is the fact that might indicate the existence of a genuine issue for trial—i.e., evidence that she never received a copy of the Plan. In this regard, the present case is similar to *Posey v. Skyline Corp.*, 702 F.2d 102, 106 (7th Cir.1983). In *Posey*, the plaintiff sought to defeat the defendant's motion for summary judgment by arguing for equitable tolling, based on the defendant's alleged failure to post conspicuously a notice advising employees of their rights under the Age Discrimination in Employment Act. The plaintiff's support for this claim was his own affidavit in which he averred: "[t]hat he frequently, i.e., almost every working day, glanced at the posters on the bulletin board in the employees' lunch room … and promptly read any new posted notices, and that he never saw and does not recall ever reading a notice to employees of their rights under the [ADEA] …" *Id.* at 105. The Seventh Circuit affirmed the district court's grant of summary judgment for the defendant, stating, "the mere possibility that a factual dispute may exist, without more, is an insufficient basis on which to justify denial of a motion for summary judgment. Posey's affidavit perhaps at best hints that a question of fact may exist in this case. Rule 56, however, demands that Posey show specific facts indicating that a genuine issue does indeed exist for trial." *Id.* at 106; *see also Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) ("The litigant opposing summary judgment … must bring to

the district court's attention some affirmative indication that his version of relevant events is not fanciful.").

As in Posey's case, Daly's deposition testimony that she did not remember receiving the Plan at best raises one possibility, among others, that a copy was never sent to her. That is not enough. *See, e.g., Posey,* 702 F.2d at 106; *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st.Cir.1997) ("[E]stablishing a genuine issue of material fact requires more than effusive rhetoric and optimistic surmise."); *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989) ("[the] evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.").

### B. Did IDM or Reliastar Conceal the Terms of the Plan?

I.V. Services argues alternatively that equitable tolling is required because IDM or Reliastar allegedly refused repeated requests to forward a copy of the Plan, thereby concealing its terms. This argument need not detain us long. The magistrate found that "[w]hat the record shows, however, is that [I.V. Services] made no effort to obtain a copy of the Plan until 1995, well after three years from the initial denial of Daly's claim for benefits."

The district court echoed this finding in its order adopting the magistrate's report.

I.V. Services contends that this finding is not supported by the record. It points to the testimony of I.V. Services President, Maureen Teachman, who stated that she contacted IDM and Reliastar in an effort to procure a copy of the Plan. In her affidavit, however, Teachman's states that she attempted to obtain a copy of the Plan "in 1995." This statement is reiterated in her deposition, where she testified that on August 10, 1995, she sent a letter to IDM via fax requesting a copy of the Plan. I.V. Services contends that, prior to this time, Teachman had spoken with an employee at IDM named Nancy Warino about getting a copy. However, Teachman testified that she had between three and six conversations with Warino, the first of which took place "[p]robably some time in the range of [the August 10, 1995] fax, a few months before perhaps." [4]

In short, the district court was not in error in stating that I.V. Services did not seek to obtain a copy of the Plan until after the applicable limitations period had already run. Acts of alleged concealment by IDM or Reliastar after the statute had run would not warrant equitable tolling. *Cf. Bernier v. Upjohn Co.,* 144 F.3d 178, 180 (1st Cir.1998) ("A party seeking to toll the statute must at the very least show that the information could not have been

4. In its appellate brief, I.V. Services makes much of the fact that it was unable to reach IDM to request a copy of the Plan because, by that time, IDM had sold its interest in the Mansfield hotel and had ceased doing business in Massachusetts. I.V. Services cites the following statement in Maureen Teachman's affidavit:

I was unable to locate [IDM] in Massachusetts and later heard that the company was no longer in business from an insurance agent who had previously been involved in that policy.... Early on, I contacted Reliastar but the office I contacted was closed (it turned out to be a sales office only) and nobody knew where the records were, and I was shuffled around from office to office until someone at Reliastar said that it was a

self insured policy and they were taking no responsibility.

I.V. Services contends that this is further evidence of IDM's "fraudulent concealment" of the Plan. We disagree. As for when these alleged attempts to reach IDM occurred, Teachman merely stated, "early on." In a subsequent affidavit and in her deposition, however, Teachman explained that her efforts to contact IDM had taken place "in 1995." In light of these later, specific statements, Teachman's vague remark that "early on" her efforts to reach IDM were fruitless is insufficient, standing alone, to establish IDM's "fraudulent concealment" at some time prior to the running of the three-year limitations period.

found by a *timely* diligent inquiry[.]") (emphasis supplied).

### C. Did the Defective Notice Warrant Equitable Tolling?

■ I.V. Services' final contention is that the district court should have excused it from complying with the Plan's three-year limitation period because it was denied the opportunity to exhaust the Plan's internal grievance procedures. The district court found that Appellees' letters denying Daly's claim did indeed fail to comply with the Department of Labor's requirement that a denial of benefits letter provide "[a]ppropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review." 29 C.F.R. § 2560.503–1(f)(4). In light of this deficiency, the court excused I.V. Services' failure to exhaust its administrative remedies prior to filing suit. The court, however, refused to toll the three-year limitation period on this basis, finding no genuine dispute that, by May, 1991 at the latest, both Daly and I.V. Services were aware that the claim for reimbursement had been denied, and that a cause of action had accrued.

According to I.V. Services, the limitations period should have been tolled as well. It claims that, had it been given the opportunity to utilize the Plan's administrative grievance procedures, that process would have "pushed forward significantly the time when the Plan's three-year limitations period for judicial action would have started running."

The Plan itself indicates the contrary. It states in relevant part: "Legal action may not be taken to receive benefits until 60 days after the date proof of loss is submitted according to the requirements of the Plan. Legal action must be taken within 3 years after the date proof of loss must be submitted." The "proof of loss" referred to is a form or other less formal submission which must be returned "within 90 days after the date of loss." Thus, the beginning of the Plan's limitations period is not dependent on whether the claimant pursues administrative review. *See* note 2, *supra.*

Similarly, we are not persuaded by I.V. Services' final salvo that refusing to toll the limitations period effectively rewards the Appellees for their own failure to comply with the notice regulations. *Compare White v. Jacobs Engineering Group Long Term Disability Benefit Plan et al.,* 896 F.2d 344, 351 (9th Cir.1989) (claim letter so deficient as to deny information needed to vindicate rights). As found by the district court—and not challenged on appeal—I.V. Services knew, by May, 1991 at the latest, that it had a cause of action regarding the denial of its claim for reimbursement. The technical defect in the letter denying the claim in no way altered this critical fact.

Because we affirm the district court's ruling that equitable tolling was not warranted and summary judgment was appropriate, we need not consider Reliastar's alternative bases for affirmance.

*Affirmed. Costs to appellees.*