**MICRO NETWORKS CORP., Plaintiff**

v.

**HIG HIGHTEC, INC., Defendant.**

No. CIV.A.01–40206–NMG.

United States District Court,
D. Massachusetts.

Dec. 17, 2001.

Mark E. Tully, Goodwin Procter LLP, Boston, MA, Gus P. Coldebella, Goodwin Procter LLP, Boston, MA, for Plaintiff.

Richard M. Gilbert, Goldstein & Manello, P.C., Todd Michael McGrath, Schnader, Harrison, Goldstein & Manello, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

### I. *Summary*

Plaintiff Micro Networks Corporation ("Micro Networks") filed suit in this Court seeking declaratory judgment with respect to HIG Hightec, Inc.'s ("Hightec") veto rights over major corporate events as a Micro Networks preferred stockholder. Micro Networks also asserts claims for interference with prospective business relations, violation of M.G.L. c. 93A and equitable estoppel.

The case is before this Court on diversity grounds. Micro Networks is a Delaware corporation with its principal place of business in Worcester, Massachusetts. Hightec is a Grand Cayman Islands corporation with its principal place of business in Miami, Florida.

On November 5, 2001, Micro Networks filed (1) an ex parte motion for impoundment and confidentiality order and (2) a Verified Complaint for emergency declaratory and injunctive relief against Hightec. This Court held a hearing on November 8, 2001 after which it impounded the plaintiff's complaint and entered an expedited scheduling order.

Currently pending before this Court are several consolidated motions. As a preliminary matter, defendant Hightec has filed, pursuant to Federal Rule of Civil Procedure 12(b)(2), (3) and (5), a motion to dismiss plaintiff's claims for lack of personal jurisdiction. Thereafter, plaintiff Micro Networks filed a motion for summary judgment on Count I of its Verified Complaint.

## II. Factual Background

### A. The Negotiations Period

Micro Networks is a leading supplier of microelectronic frequency sources and signal processing components and subsystems used by Original Equipment Manufacturers ("OEMS") in telecommunications, data and military markets. Hightec is an investment holding company focused on venture capital investments and management buy-outs.

During the Summer of 1997, a group of investors in Florida advised Hightec of a potential investment in Micro Networks. Interested in that opportunity, an officer of Hightec, John Bolduc ("Bolduc"), met with Micro Networks' personnel in Florida and Massachusetts. As part of his investigation, Bolduc performed due diligence at Micro Networks' headquarters in Worcester. At the same time, Micro Networks began reappraising its corporate structure and on November 4, 1997, it filed an amended Certificate of Incorporation in Delaware("Amended Certificate of Incorporation"). The Amended Certificate supplanted an earlier Certificate of Incorporation filed in 1996.

By the Fall of 1997, Micro Networks and Hightec began negotiating the final terms of the Securities Purchase Agreement ("the SPA"). On September 10, 1997, Micro Networks' counsel sent to Hightec's counsel (1) a model term sheet that was a form it had used in a transaction with another venture capital firm, NEGF, (2) a term sheet stating that Hightec would have the opportunity to invest on the same terms as contained in the NEGF sheet, and (3) a stock option and stock purchase plan that was then in effect at Micro Networks.

Section 7.3 of the Stock Terms, an attachment to the SPA providing a description of preferred stock, quickly emerged as a contentious issue for both parties. In the NEGF term sheet model, Section 7.3 conferred upon 70% of the holders of Series C and D stock a consent right over major corporate events. In Micro Networks' proposed Securities Purchase Agreement to Hightec, Section 7.3 conferred upon 70% of preferred stock holders generally consent rights. That revised version of Section 7.3 was consistent with (1) its proposed Restated Certificate of Incorporation and (2) amendments Micro Networks made to its previous purchase agreement with NEGF.

On December 8, 1997, Micro Networks proffered and Hightec signed the final version of the SPA, which purportedly had as an attachment the revised version of Section 7.3 stating that Micro Networks could

not enter into certain transactions, including mergers, "without the prior consent of *the holder of not less than 70% of the outstanding shares of Preferred Stock.*" Hightec asserts that at the time it signed the SPA, the description of preferred stock and the consent rights of its holders was neither attached to the SPA nor furnished separately.

On December 22, 1997, Micro Networks filed the Restated Certificate in Delaware ("Restated Certificate") that incorporated the revised version of Section 7.3 conferring upon 70% of the holders of all preferred stock a consent right over major corporate events.

Micro Networks distributed the closing binder to Hightec in February, 1998. Hightec contends that the closing binder it received included neither an attachment with the Stock Terms nor a copy of Section 7.3. Bolduc assumed, however, that he had resolved the consent rights issue in Hightec's favor, and thus neither requested a description of the preferred stock nor reviewed the binder in detail.

### B. 1997–2001: Interaction Between Hightec and Micro Networks

The SPA gave Hightec the right to appoint one member to Micro Networks' Board of Directors. Hightec appointed Bolduc to the Board and, by virtue of that seat, assumed a significant role in Micro Networks' corporate governance beginning in 1998. As Hightec's agent, Bolduc personally attended Board meetings in Massachusetts on March 24 and September 28, 1998, October 27, 1999, July 20, 2000 and February 22, 2001. On several other occasions, Bolduc participated in Board meetings by telephone.

Micro Networks argues that in addition to Hightec's role on the Board, Hightec has been involved in Micro Networks' operations, management and strategic decisions. Micro Networks' current President and CEO, Michael Ferrantino, has had numerous contacts with Hightec by telephone, fax, email and in person.

Indeed, Hightec increased its stake in Micro Networks when, in 1998, it acquired Micro Networks' Series D preferred stock pursuant to the SPA. After that acquisition, Hightec held more than 30% of the outstanding shares of Series C and Series D preferred stock.

### C. The Corporate Event

In Spring, 2001, Micro Networks hired Bank of America Securities ("BAS") to explore strategic transactions. After several months of investigating potential strategic partners, Micro Networks entered into a non-binding letter of intent with a buyer ("Buyer") on October 12, 2001. Shortly thereafter, Micro Networks' Board of Directors approved the agreement with Buyer. Hightec asserts that in the weeks preceding Micro Networks' final negotiations with Buyer, Hightec informed Micro Networks' Board that, based upon the information then available, Hightec was not prepared to consent to the proposed corporate event. Three days before the Board approved the agreement with Buyer, Hightec sent a fax to every Board member stating that Hightec had the right, which it intended to exercise, to withhold its consent to the proposed sale.

On November 2, 2001, Micro Networks received from Hightec's counsel a letter stating that Hightec would seek to enjoin the acquisition if the transaction proceeded without obtaining Hightec's consent. The letter alleged, in relevant part, that (1) Micro Networks had ignored Bolduc's request for necessary financial information on the deal's terms, (2) Micro Networks did not account for a number of factors in calculating the proceeds of the deal to the

---

stockholders, including penalty dividends for Series C and Series D stockholders, (3) Micro Networks' proposed distribution of the deal's proceeds unfairly benefitted the common stockholders, and (4) Hightec planned to withhold its consent to the corporate event pursuant to Section 7.3 of the Certificate of Incorporation dated November 4, 1997.

### III. *Defendant's Motion to Dismiss*

#### A. Legal Standard

When a defendant challenges personal jurisdiction, the burden of proof is on plaintiff to prove the existence of personal jurisdiction under both the forum's long-arm statute and the Due Process clause of the Constitution *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir.1995). The plaintiff must make a *prima facie* case that "establishes sufficient facts on which to predicate jurisdiction over the defendant." *Stanton v. AM General Corp.*, 50 Mass.App.Ct. 116, 117, 735 N.E.2d 407 (Mass.App.Ct.2000) (citations and internal quotations omitted). In establishing its *prima facie* case, the plaintiff cannot rely on mere allegations, but must offer affirmative proof and this Court must accept the plaintiff's sufficiently supported allegations and proffers of evidence as true. *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir.1992).

#### B. Applicable Law

The law of the forum state determines whether a federal district court has jurisdiction over a nonresident defendant in a diversity suit. *Hahn v. Vermont Law School*, 698 F.2d 48, 49 (1st Cir.1983). Under Massachusetts law, a court may exercise jurisdiction over a nonresident defendant if it is both authorized by statute and consistent with the strictures of the United States Constitution. *Good Hope Indus., Inc. v. Ryder Scott, Co.*, 378 Mass. 1, 5–6,

389 N.E.2d 76 (1979); *Nowak v. Tak How Inv., Ltd.*, 94 F.3d 708, 712 (1st Cir.1996).

#### 1. The Massachusetts Long–Arm Statute

The Massachusetts long-arm statute provides in relevant part that a Massachusetts Court may exercise personal jurisdiction

over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth

M.G.L. c. 223A, § 3(a).

#### 2. Transaction of Business in Massachusetts

In order for jurisdiction to exist pursuant to § 3(a), the plaintiff must satisfy two baseline requirements: (1) the defendant must have transacted business in Massachusetts, and (2) the plaintiff's claim must have arisen from the defendant's transaction of such business. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767, 625 N.E.2d 549 (1994).

Massachusetts courts have interpreted the "transacting any business" clause in § 3(a) broadly and that provision reaches "purposeful acts by an individual, whether personal, private or commercial." *Buckeye Assoc. v. Fila Sports, Inc.*, 616 F.Supp. 1484, 1492 (D.Mass.1985) (*quoting Ross v. Ross*, 371 Mass. 439, 441, 358 N.E.2d 437 (Mass.1976)).

#### 3. Hightec's Activities in the Forum

In the instant case, Hightec unquestionably transacts business in Massachusetts for the purposes of § 3(a). Hightec's contacts with the forum, *in toto*, adequately support the assertion of jurisdiction under § 3(a). Although Hightec contends that the principal part of its in-

vestigation of Micro Networks occurred in Florida, the transacting business requirement of § 3(a) is not a relative inquiry. In the instant case, the record makes plain that Hightec conducted numerous investigations and negotiations within the forum. Moreover, it participated in the corporate governance of Micro Networks over the course of four years, which, without more, certainly suggests deliberate commercial contacts in Massachusetts. *See Habourvest Int'l Private Equity Partners Ii Direct Fund, L.P. v. Axent Tech., Inc.,* 2000 WL 1466096 *5 (Mass.Super.2000). Finally, Hightec's letter threatening a lawsuit is a constituent part of its course of commercial conduct in the forum as a significant stockholder in a Massachusetts company.

■ Pursuant to § 3(a), Micro Networks must also show that its cause of action arose from Hightec's transacting business in Massachusetts. *See Tidgewell v. Loon Mountain Recreation Corp.,* 820 F.Supp. 630, 631 (D.Mass.1993). That is, there must be a "rational nexus" between Hightec's transaction of business and Micro Networks' cause of action. *See Heins v. Wilhelm,* 26 Mass.App.Ct. 14, 18, 522 N.E.2d 989 (Mass.App.Ct.1988). In the instant case, the activities undertaken by Hightec in Massachusetts certainly are connected to the instant dispute. In fact, Hightec's activities in the forum both as an equity investor and later as a member of Micro Networks' Board of Directors culminated in the instant contractual dispute.

## C. The Due Process Clause

■ The assessment of personal jurisdiction under the Due Process Clause of the Constitution is "more an art than a science." *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994). In order for a court's assertion of personal jurisdiction to pass constitutional muster,

there must be certain minimum contacts between a nonresident defendant and the forum state such that the exercise of personal jurisdiction over that defendant accords with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Courts have distinguished between two kinds of personal jurisdiction: "general" (i.e., cases in which the assertion of jurisdiction is unconnected to activity in the forum, but rather is based upon ongoing activity therein) and "specific" (i.e., cases in which jurisdiction directly arises out of forum-based conduct).

■ Micro Networks argues broadly that this Court may properly exercise specific jurisdiction over Hightec because it has sufficient contacts with Massachusetts to make jurisdiction consistent with the due process clause. The First Circuit has articulated a three-part framework to determine if sufficient contacts exist to exercise specific personal jurisdiction: (1) relatedness, (2) purposeful availment, and (3) reasonable in light of the the gestalt factors. *United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1089 (1st Cir.1992)("*Pleasant St. I*"); *see also Nowak,* 94 F.3d at 712–713.

### a. Relatedness

■ The relatedness prong focuses a court's attention on the nature of the plaintiff's claim and the nexus, if any, between that claim and the defendant's contacts with the forum. *Pleasant St. I,* 960 F.2d at 1089. The facts in the case at bar fall squarely within the First Circuit's modification of the proximate cause standard for relatedness. Micro Networks' claims arise from Hightec's conduct as a purchaser of preferred stock and then an equity stockholder in a Massachusetts-

based business, all pursuant to a written contract.

### b. Purposeful Availment

In analyzing the second element of the constitutional prong of specific personal jurisdiction, this Court must consider whether Hightec's contacts with the forum are tantamount to "purposeful availment" of the privilege of conducting business in that state. *Ticketmaster–New York*, 26 F.3d at 207. The crux of the purposeful availment inquiry is voluntariness and foreseeability such that "the defendant's contacts with the forum state be such that he should reasonably anticipate being haled into court there." *Id.* (*citing World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

In the present case, Hightec's contacts with Massachusetts were voluntary and put it on notice that it could reasonably anticipate being haled into court in the Commonwealth. Not only did Hightec contract with a Massachusetts company, but it also actively participated in the corporate governance of a business entity located within the forum.

### c. The Gestalt Factors

The third and final stage of the personal jurisdiction analysis affords an opportunity for concepts of reasonableness to illuminate that review. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In broad outline, the gestalt factors balance the forum's interests, the litigants' interests and overarching efficiency concerns. *Id.*; *See e.g., Pleasant St. I*, 960 F.2d at 1088; *Nowak*, 94 F.3d at 718; *Ticketmaster–New York*, 26 F.3d at 211.

In the present action, Massachusetts has an interest in exercising jurisdiction over a suit involving the corporate governance of a Massachusetts-based company, particularly where significant events leading to the present dispute occurred in Massachusetts. Moreover, a Massachusetts forum is obviously more convenient for Micro Networks than a Florida forum. A speedy resolution of the case in this forum will promote judicial efficiency in light of the time sensitive nature of the events at issue. The gestalt factors, on balance, weigh in favor of Micro Networks, which has proffered ample evidence that this Court's exercise of jurisdiction over Hightec is consistent with the strictures of the Constitution. Defendant's motion to dismiss will, therefore, be denied.

### IV. Plaintiff's Motion for Summary Judgment on Count I

Micro Networks has filed a motion for summary judgment on Count I of its Amended Complaint seeking a declaratory judgment that Hightec's consent rights are not governed by the Amended Certificate of Incorporation. Micro Networks' motion addresses a discrete issue: the scope of Hightec's consent rights as a holder of Micro Networks' Series C and Series D preferred stock.

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery on file and affidavits "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has satisfied its burden, the burden shifts to the non-moving party

to set forth specific facts showing that there is a genuine triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the record in the light most hospitable to the non-moving party and indulge all reasonable inferences in his favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists, summary judgment is appropriate.

Although this standard is quite generous to the nonmoving party, it does "not pave the way for every case, no matter how sketchy, to reach the jury." *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 425 (1st Cir. 1996). Even in cases where slippery concepts such as motive or intent are at issue, a nonmoving party may not merely rely upon "conclusory allegations, improbable inferences, and unsupported allegation." *Medina–Munoz v. R.J. Reynolds,* 896 F.2d 5, 8 (1st Cir.1990). That is, the nonmoving party must do more than merely show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Based upon these established principles, it follows that if the factual context makes the nonmoving party's claim implausible, it "must come forward with more persuasive evidence to support [its] claim than would otherwise be necessary." *Id.*

### B. Discussion

Two issues are the focal point of this Court's summary judgment inquiry: (1) whether the SPA confers upon Hightec, as a holder of more than 30% of Series C and Series D preferred stock, the right to veto major corporate events, and (2) whether Hightec is estopped from asserting that the Restated Certificate and the Stock Terms incorporated therein are inapplicable to it.

### 1. The Terms of the SPA

In cases where the contract terms are unambiguous, summary judgment is proper. *Coll v. PB Diagnostic Systems, Inc.,* 50 F.3d 1115, 1122 (1st Cir. 1995). Both parties concede that the SPA is a valid contract that defines Hightec's rights as a preferred stockholder. The parties also agree that Hightec signed a contract that stated that an exhibit containing Section 7.3 was "attached hereto." It is also undisputed that the SPA on its own terms 1) is a fully integrated document, 2) memorializes the final understanding of the parties, and 3) if unambiguous, cannot be modified through evidence of antecedent agreements.

The parties do dispute, however, which version of Section 7.3 was incorporated into the executed SPA. Hightec claims that it never agreed to the revised version of Section 7.3 that did not confer a veto power upon Series C and Series D preferred stockholders. Bolduc, Hightec's officer, has submitted an affidavit in which he avers that he neither requested on the day of the closing nor received a copy of Section 7.3 "which contained *highlighted portions* of the Description of Preferred Stock."

Notably, Bolduc does not attach to his affidavit a copy of the final terms of Section 7.3 as he understood them to be when he signed the contract. Rather, he includes superceded versions of Section 7.3, which were, as both parties admit, several negotiations removed from the final agreement as executed. In any event, those superceded versions are inadmissible under the parole evidence rule. Bolduc thus purports to have signed a document that was missing a critical attachment that he

never saw in its final form. He now claims unequivocal rights to veto a pending transaction based upon that missing attachment. His affidavit is unaccompanied by substantive evidentiary support. *Albright v. Federal Deposit Ins. Corp.*, 21 F.3d 419 (1st Cir.1994) (unpublished opinion); 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2722 (2001) (statements made in a Rule 56 affidavit about unattached contracts and documents may be sufficient to establish a triable fact as to their existence but not as to their terms).

Moreover, Bolduc's affidavit merely indicates that he did not have before him Section 7.3, a referenced attachment, when he signed the agreement. That is not the same as an averment that the Section was, in fact, omitted and, if Bolduc's words are construed literally, they are consistent with the presumption that he saw the revised version Section 7.3 at the closing, albeit in a form not marked with highlighted portions. Such a distinction may appear picayune, but it is one of which this Court must be mindful in light of the rigorous requirements of Fed.R.Civ.P. 56.

Bolduc's affidavit suggests that a question of fact may be present in this case. Rule 56 requires, however, that Hightec present at least some *specific facts* demonstrating a genuine issue of material fact. The remote possibility that a factual dispute may exist, without more, is an inadequate ground upon which to base denial of a motion for summary judgment. *Posey v. Skyline Corp.*, 702 F.2d 102, 105–6 (7th Cir.1983), *cert denied* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *I.V. Serv. of America, Inc. v. Inn Dev. & Management, Inc.*, 182 F.3d 51, (1st Cir.1999).

This Court has no obligation to engage in speculation or conjecture about the numerous implications of Bolduc's affidavit. *Posey*, 702 F.2d at 102. Unsupported by even the shakiest evidentiary foundation, his statements regarding Section 7.3 are equivocal and implausible in light of the fact that Hightec and Micro Networks heavily negotiated the terms of Section 7.3 and that it was, according to Bolduc, a "cornerstone" of the agreement.

Micro Networks and Hightec are both sophisticated corporate actors. Micro Networks has presented persuasive evidence that the revised version of Section 7.3 incorporated into the Restated Certificate controlled the purchase agreement it executed with Hightec. In its opposition to the motion for summary judgment, Hightec has provided little more than a parade of possibilities. This Court could, but fortunately need not, grant summary judgment in the plaintiff's favor based upon the paucity of defendant's factual allegations because Hightec's conduct subsequent to its initial purchase of Micro Networks' stock determines the issue more conclusively.

## 2. The Equitable Principles of Estoppel

 Under equitable principles and as a matter of law, Hightec is barred from challenging the applicability to it of the revised version of Section 7.3 in the Restated Certificate because not only has Hightec failed to raise any objections to the description of its voting rights in numerous subsequent documents, but also it has accepted the full benefits of the SPA and the Restated Certificate since 1997.

 The doctrine of equitable estoppel is well-established under both Massachusetts and Delaware law.[1] *Dela, Inc.*

---

1. It is well settled that internal corporate affairs are governed by the law of the state of incorporation (Delaware). *Harrison v. NetCentric Corp.*, 433 Mass. 465, 470, 744 N.E.2d

v. *CNA Ins.* Co., 50 F.3d 1 (1st Cir.1995) (per curiam); *DiLoreto v. Tiber Holding Corp.,* 25 Del.J.Corp.L. 456, —— A.2d —— (Del.Ch.1999). The overarching purpose of the doctrine is to prevent results contrary to "good conscience and fair dealing" and its application is governed by "no rigid criteria". *Id.* In broad outline, equitable estoppel seeks to prevent a person from denying the natural consequences of his words or actions where that conduct induces another to change his position. *Id.* (collecting authorities). The plaintiff asserting equitable estoppel need not show that the opposing party intentionally misled or deceived the plaintiff. "[A]s a general rule equity will not hear a complainant stultify himself by complaining against acts of which he has demonstrated his approval by sharing in their benefits", particularly where those rights are contractual in nature. *Id.* (*citing Trounstine v. Remington Rand,* 194 A. 95, 99 (Del.Ch.1937)).

### a. The Doctrine of Acquiescence

■■■■■ When considering a claim of acquiescence, a kind of equitable estoppel, a court must weave together a patchwork of circumstances to determine the intent and motive of the parties and their respective rights and duties. *Id.; DiLoreto,* 25 Del. J.Corp.L. at 470–71. Although issues of motive and intent are often, if not invariably, at issue, if there is sufficient evidence of acquiescence, summary judgment is appropriate. *Frank v. Wilson,* 9 A.2d 82, 87 (Del.Ch.1939). In the corporate law context, a stockholder need not know of the act in dispute, but when his action "reasonably amounts to a recognition of the validity of that act . . . a real conscious intent to approve or ratify it is not essential to that defense." *Id.* (*citing* 2 Pom.

Eq.Jur. (4th Ed.) § 965); *NTC Group, Inc. v. West Point–Pepperell,* 1990 WL 177497 *5 (Del.Ch.1990). Indeed, a court may infer acquiescence from silence where it is clear that a dissenting stockholder (or, in our case, a dissenting director) would have voiced his objections or, by implication, his right to object. An unreasonable delay, although not dispositive, is also evidence of equitable acquiescence. *Id.* at 86–87.

### b. Hightec's Course of Conduct as a Preferred Stockholder

■■■■ In the instant case, Hightec, through its affirmative conduct and the silence of its officer who was a director of Micro Networks, acquiesced to the revised version of Section 7.3 attached to the Restated Certificate. Since 1997, Hightec had ample opportunity to assert its consent rights to major corporate events, or alternatively, to confirm its consent rights under the SPA. Hightec received a copy of the Restated Certificate through its counsel, placing it on notice, if its vignette is accepted as true, that its putative rights as a preferred stockholder were different from other preferred stockholders.

The issue of preferred stockholder rights did not disappear after Hightec signed the SPA, but Hightec nonetheless made no mention of its broad consent rights during the course of four years. Hightec received a closing binder in 1998 that again allegedly omitted an attached Section 7.3, but Hightec claims that no one on its behalf approached Micro Networks because it believed the issue of voting rights had been settled. In 1998, Hightec purchased Series D preferred stock pursu-

622 (Mass.2001); Restatement (Second) of Conflict of Laws § 302 (1971). In all other instances, Massachusetts law would govern pursuant to a Massachusetts choice of law

provision in the SPA. The outcome of this case, however, would be the same under Massachusetts or Delaware law.

ant to the terms of the SPA and again voting rights were ostensibly not an issue. Hightec's representative, Bolduc, sat on Micro Networks' Board of Directors and, in that capacity, received descriptions of the various voting rights of Micro Networks' stockholders that never referenced Hightec's alleged veto power over major corporate events. Yet, Hightec did not, either through its agent Bolduc or otherwise, ever assert or explicitly reference its consent rights over that four year period.

There were apparently other major corporate events to which Hightec had a clear right, if not a duty, to assert its consent rights. Micro Networks issued Series E preferred stock in 2000, and Bolduc received a memorandum outlining Hightec's consent rights, which, for all practical purposes, was identical to the revised version of Section 7.3 in the Restated Certificate. Micro Networks also periodically issued stock options. Nevertheless, Hightec, ostrich-like, remained oblivious and never asserted its consent rights.

It is incongruous for a sophisticated corporate investor to remain so inattentive. Hightec was Micro Networks' second largest stockholder, and its consent rights necessarily affected not only the rights of other Micro Networks' stockholders but also the intrinsic value of Micro Networks as a corporate entity. If Hightec possessed the extensive veto rights it claims, its representative on Micro Networks' Board of Directors had a duty to be forthright with the Board so that it could inform prospective purchasers of preferred stock of Hightec's unassailable position with respect to major corporate transactions. *See, e.g., In re IXC Communications, Inc. v. Cincinnati Bell, Inc.,* 1999 WL 1009174, *4 (Del.Ch.1999) (discussing the duties of a director). Hightec cannot, therefore, without pointing to specific facts or evidence, assert that it now has a con-

sent right over major corporate events when its continuous course of conduct indicates otherwise. Accordingly, Micro Networks' motion for summary judgment will be allowed and this Court will declare that Hightec's consent rights are governed by the revised version of Section 7.3 incorporated in the Restated Certificate.

## ORDER

For the foregoing reasons, HIG Hightec's Motion to Dismiss (Docket No. 17) is **DENIED**. Micro Networks' Motion for Summary Judgement on Count I of the Amended Verified Complaint (Docket No. 11) is **ALLOWED**. This Court hereby declares that HIG Hightec's consent rights are governed by the revised version of Section 7.3 incorporated in the Restated Certificate.

**So ordered.**