**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

M. HARVEY BRENNER,
                    *Plaintiff-Appellant,*

            and

DORIS L. STORMS,
                                *Plaintiff,*

            v.                                          No. 02-1149

JOHNS HOPKINS UNIVERSITY; THE
JOHNS HOPKINS UNIVERSITY
FACULTY AND SENIOR STAFF
RETIREMENT PLAN,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-97-313-CCB)

Argued: December 4, 2003

Decided: February 12, 2004

Before WIDENER, LUTTIG, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Martin Harold Schreiber, II, BROWN, GOLDSTEIN &
LEVY, L.L.P., Baltimore, Maryland, for Appellant. John F. Schultz,

DRINKER, BIDDLE & REATH, L.L.P., Philadelphia, Pennsylvania, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Appellant, Dr. M. Harvey Brenner, appeals from the grant of summary judgment in favor of appellees, the Johns Hopkins University and the Johns Hopkins University Faculty and Senior Staff Retirement Plan (collectively, "the University"), in his civil action alleging violations of the Employee Retirement Income Security Act ("ERISA"). In particular, Brenner claims that the University failed to inform him that enrollment in the Retirement Plan was not automatic and, consequently, breached its fiduciary duty under ERISA § 404(a)(1), codified at 29 U.S.C. § 1104(a)(1) (2000). The district court rejected Brenner's claim on the ground that there was no genuine dispute that the University sent Brenner, by sufficiently reliable means, materials adequate to inform him of the plan's conditions of enrollment. Finding no reversible error, we now affirm.

I.

The University adopted the Retirement Plan for its employees in 1969. When Brenner, a "world-renowned epidemiologist," J.A. 22, joined the University's faculty in 1972, he was told that the University would provide him with retirement benefits and assumed that he would be automatically enrolled in the Retirement Plan. Enrollment in the plan was not, however, automatic, but rather depended on compliance with two conditions. First, an employee must have attained a certain age or have been employed at least a specified number of years. Second, the plan required an employee to submit an enrollment application.

According to the University, when Brenner started work in the Fall of 1972, he had not yet reached the minimum age, but did, once this requirement was lowered to 32 on July 1, 1973. Since Brenner was now eligible for enrollment, the University's Office of Personnel Benefits prepared a memorandum dated August 23, 1973, advising him of his eligibility to participate in the Retirement Plan and that, "if he wished to enroll," he needed to "arrange for completion of enrollment and payment authorization forms." J.A. 638. The memorandum also included a waiver form that Brenner was to return if he chose not to enroll. The University offered testimony that the memorandum was sent to Brenner's campus address through campus mail, and that such memoranda were the normal means by which the University notified employees of their eligibility status prior to ERISA's enactment.

After ERISA was enacted in 1975, the University revised its notification procedures. For instance, the University asserted that it distributed at least two major Summary Plan Descriptions ("SPDs"), documents that ERISA requires to be provided to plan participants and that must summarize the plan in easily understood terms. *See* 29 U.S.C. § 1022, 1024(b) (2002). The University published an initial SPD in November 1977, and another major amendment in 1984. After 1984, the University claims to have produced several updates of the amended SPD. These SPDs explained a number of the plan's key terms; most importantly for present purposes, the SPDs explained that the participation of eligible faculty was "voluntary," J.A. 752, and/or that such employees could participate in the plan "upon completion of an application form," J.A. 112.

The parties offered conflicting evidence as to how the SPDs for the Retirement Plan were distributed. Frank Kellner, the Senior Director of the Office of Benefits Administration, claimed that the University sent the initial SPD and all subsequent amendments to the home addresses of faculty by first-class mail. Sandra Cobb, the Manager of Worklife Programs for the Office of Benefits Administration, stated that the SPDs were sent to faculty through the campus mail system. And Bernie Kuczak, Kellner's assistant, testified that the SPDs were not mass-mailed to faculty at all, but were instead provided by other means.

The University also adopted a number of informal notification practices with respect to the Retirement Plan. For instance, from 1974

to 1985, the University sent eligible employees an "Annual Statement of Benefits" summarizing the available benefits. If an individual was not enrolled in the Retirement Plan, the University claims that the amounts of contribution would be listed as zeros and a notation would appear that the employee was not participating in the plan. The University distributed these statements annually, and "would have sent" Brenner ten copies of these statements. J.A. 46. Periodically, the University would also distribute to plan participants "Retirement Updates," newsletters examining issues raised by the Retirement Plan. The University provided evidence that two of these sporadically-mailed newsletters contained messages directed at individuals who were not participating in the program.

Furthermore, the University offered evidence that it made efforts beyond these generally-distributed documents to contact Brenner about his enrollment obligation. For example, Dean Donald Henderson drafted a letter to Brenner in 1984 encouraging him to join the plan. Additionally, Assistant Dean William Pipkin allegedly failed on several occasions in 1988 to persuade Brenner to enroll.

Despite this evidence, Brenner asserted that he was never told that he would not be automatically enrolled in the Retirement Plan, denied receiving any of the written materials discussed above, and further asserted that the record contained indications that many, if not all, of these materials were never sent to him. Brenner stated that he did not learn that he was not enrolled in the plan until February 1994, when he attempted to reallocate his benefits after he separated from his wife.

II.

In January 1997, Brenner filed the instant lawsuit, asserting six counts against appellees. Count I — the only one relevant to this appeal[1]

---

[1]Counts II-VI were dismissed on other grounds, and Brenner does not appeal their dismissal. Moreover, Doris L. Storms, Brenner's wife and a co-plaintiff below, voluntarily dismissed her appeal of the district court's partial grant of summary judgment against her. (The district court denied the University's motion for summary judgment as to her claim of breach of fiduciary duty.).

— asserted a claim for breach of fiduciary duty under 29 U.S.C. § 1104(a)(1) on the ground that the University imposed a duty or condition of enrollment without adequate notice to him. Because, Brenner asserted, he was never informed of his need to enroll in the retirement plan in order to receive benefits and never received any of the materials that the University claimed would have told him of his need to enroll, the University failed to provide him with adequate notice of the Retirement Plan's enrollment requirements, in breach of its fiduciary duty under ERISA. In a lengthy opinion, the district court rejected Brenner's claim, concluding that there was no credible dispute that the University sent Brenner, by means sufficient under the relevant regulation, materials that would have informed him of the enrollment requirements. Accordingly, the district court granted the University's motion for summary judgment. *Brenner* v. *Johns Hopkins Univ.*, No. Civ. CCB-97-313, 2000 WL 33312762 (D. Md. Sep. 29, 2000).

The district court began its analysis by noting the parties' "agree[ment] that the . . . Retirement Plan is a 'pension plan' within the definition of ERISA, 29 U.S.C. § 1002(2)(A); that [Brenner is a] 'participant[ ],' 29 U.S.C. § 1002(7); and that the University is the plan administrator, 29 U.S.C. § 1002(16), and a 'fiduciary' under 29 U.S.C. § 1102." *Id.* at 19, 2000 WL 33312762, at *8. Thus, the dispute only concerned the scope of the University's fiduciary duty to Brenner, and then whether, considering the evidence in the light most favorable to Brenner, the University breached that duty by failing to provide Brenner with adequate notice of his obligation to enroll in the retirement plan in order to receive benefits.

The particular fiduciary duty Brenner claimed the University breached is set forth in 29 U.S.C. § 1104(a)(1).[2] While noting that we

---

[2]The most pertinent part of that section as referenced by Brenner relates to a fiduciary's duties of loyalty and prudence, and provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ." 29 U.S.C. § 1104(a)(1), (a)(1)(B) (2000).

have held that "the general fiduciary duty standard cannot be used to expand the notice requirements imposed" by ERISA, the district court nevertheless concluded that Brenner "allege[d] a breach of fiduciary duty for failure to provide notice that . . . [wa]s essentially coextensive with the notice requirements" imposed on SPDs. *Id.* at 22, 2000 WL 33312762, at *9. In particular, the court concluded that Brenner's asserted fiduciary duty derived from the requirements of 29 U.S.C. §§ 1022 and 1024(b) that SPDs be "sufficiently accurate and comprehensive to reasonably apprise . . . participants . . . of their rights and obligations under the plan," 29 U.S.C. § 1022(a), including "the plan's requirements respecting eligibility for participation and benefits," 29 U.S.C. § 1022(b). *See also* 29 U.S.C. § 1024(b).

The district court then analyzed the evidence to determine the University's compliance with this alleged fiduciary duty. As to the content of the SPDs prepared by the University, the district court concluded that these documents notified those participants who received them "of their need to complete an application and that participation in the retirement plan was voluntary." *Brenner*, slip op. at 23, 2000 WL 33312762, at *9. The district court also concluded that the other written forms of notification the University claims to have provided would have also communicated this obligation, if they were received.

But because Brenner had denied ever receiving an SPD or any of the other documents identified by the University, this conclusion did not end the court's analysis. Instead, the district court proceeded to determine whether the specified documents were distributed by means sufficient under the relevant Department of Labor regulation. That regulation requires that administrators send certain documents using measures "reasonably calculated to ensure actual receipt of the material[s]." 29 C.F.R. § 2520.104b-1(b)(1) (2002). In particular, the regulations deem acceptable "in-hand delivery to an employee at his or her worksite," as compared with "merely plac[ing] copies of the material in a location frequented by participants," which is "in no case" sufficient. *Id.* The regulation also allows first, second, or third-class mail to be used, but the latter two forms are sufficient only if certain standards are met. *See id.*

Applying this regulation to the materials in this case, the court first noted the conflict in the evidence about whether document distribu-

tion occurred "by first-class mail or delivery to individual campus addresses"; however, the court resolved this conflict by holding that "both methods are acceptable under the regulation[ ]." *Brenner*, slip op. at 25, 2000 WL 33312762, at *10. Thus, all that was left to decide was whether the University demonstrated that documents sufficient to comply with its fiduciary duty had been distributed by at least campus mail.

The district court held that the University satisfied its burden on this issue. As to the SPDs, the court concluded that the University offered evidence of the distribution of an initial SPD in 1977, a revised SPD in 1984, and other updated SPDs. While noting that only the 1977 and 1984 SPDs were filed with the Department of Labor as required, the court concluded that those limited filings "nevertheless would suggest that at least two of the SPDs were distributed to eligible participants." *Id.* at 25-26, 2000 WL 33312762, at *10-11. The court concluded that the University also provided substantial evidence of its distribution of memoranda, Annual Benefit Statements, and related documents, in compliance with its fiduciary duty. Moreover, the district court accorded weight to the additional steps beyond written notice the University took to notify Brenner of his obligation to enroll — reasoning that they evidenced compliance with its fiduciary duty — and rejected Brenner's attempts to defeat summary judgment by relying on gaps and inconsistencies in the University's evidence. For these reasons, the district court granted summary judgment in favor of the University.

### III.

Brenner raises several contentions of error on appeal, only three of which need be addressed in any detail. Although he is correct as to the first of the three claims, Brenner still fails to show that the district court committed reversible error.

As an initial matter, Brenner correctly asserts that the district court erred in its assessment of the extent of the conflict in the evidence regarding the distribution of Retirement Plan SPDs. The district court overlooked Kuczak's testimony that these SPDs were *not* mailed to plan participants but, rather, were provided "when [employees] visited the regional personnel office to enroll in the plan . . . or upon

request," J.A. 654-655 — an unacceptable system of general distribution under the regulation. *See supra* at 6. This testimony created a genuine dispute of fact that, at summary judgment, must be resolved in Brenner's favor.

Nevertheless, we reject Brenner's consequent assertion that, even if the evidence shows that other materials were sent to him that would have informed him of his obligation to enroll in the plan to receive benefits, the University's failure to distribute the SPDs by adequate means was, by itself, a breach of its fiduciary duty under 29 U.S.C. § 1104(a)(1). We have, admittedly, relied on the notice requirements that ERISA imposes on plan administrators to inform the scope of the section 1104 fiduciary duty, and we have found a breach of that duty when information required by statute to be contained in an SPD and furnished to participants was not so provided. *See Rodriguez* v. *MEBA Pension Trust*, 872 F.2d 69, 73-74 (4th Cir. 1989) (finding a breach of fiduciary duty when a fiduciary failed to inform a plan participant of a material modification in the terms of the plan, as was required by 29 U.S.C. §§ 1022(a)(1) and 1024(b)). Here, however, Brenner has not established how the fiduciary duty he asserts, the scope of which is defined by the University's statutory and regulatory obligations to properly distribute SPDs which would inform him of the necessary requirements for plan enrollment, was breached when, although the University did not distribute SPDs in an acceptable fashion, there is no genuine dispute that it adequately distributed to Brenner several other documents that would have, if received, informed him of those requirements. After all, Brenner has sued for breach of the fiduciary duty imposed by section 1104(a)(1), and not for the University's failure to comply with its notice obligations under sections 1022 and 1024(b); "[s]tated differently, an SPD is only one way, but not the only way, [the University] could have informed Dr. Brenner that participation in the Plan was not automatic." Br. of Appellees at 25. Consequently, we conclude that the factual dispute over how the SPDs were distributed is immaterial in this case.

Brenner also contends that, even if the evidence shows the University sent Retirement Plan SPDs and other written materials at least by campus mail, the University provided no evidence that campus mail satisfied the minimum standards for distribution, *i.e.*, that document distribution through campus mail reasonably ensured actual receipt by

plan participants. *See* 29 C.F.R. § 2520.104b-1(b)(1). We reject this contention as well.

Notwithstanding the uncontradicted evidence that the Annual Statements of Benefits were sent by first-class mail (a method explicitly designated as sufficient by the regulation), the University provided evidence that generally described how the other documents would have been delivered through campus mail from the sender to Brenner's mailbox — despite Brenner's correct assertion that this evidence did not detail *every* aspect of the system's operation. Moreover, the University presented testimony indicating that campus mail did not suffer from significant delivery problems.[3] In contrast, Brenner can identify no affirmative evidence indicating that the campus mail was unreliable, but instead points only to gaps in the testimony describing how that system operated.

The University's evidence as to the adequacy of campus mail at the relevant times could, no doubt, have been stronger. But as the district court observed, Brenner's claim of error here "relies on the unsurprising fact that University employees have inconsistent or failed recollections of long-ago events . . . ." *Brenner*, slip op. at 26-27, 2000 WL 33312762, at *11 (citing, *inter alia*, *I.V. Servs. of Am., Inc.* v. *Inn Dev. & Mgmt., Inc.*, 182 F.3d 51, 55-56 (1st Cir. 1999)). While we do not accept the University's contention that campus mail was equivalent to in-hand delivery, we nonetheless conclude that, in the absence of contrary evidence from Brenner, the University carried its burden on this issue.

## CONCLUSION

Upon review of the parties' briefs and oral arguments, and upon

---

[3]Kellner, for instance, testified that he had no concerns about the mail system at the time, and offered his observation that after a person had been on campus for "a year or so" — allowing time for them to become "clearly identified with a university address" — campus mail was "much more effective" than first-class mail. J.A. 500-01. Kuczak added that, during her time at the University, she never heard of a faculty member not receiving letters like the August 1973 Memorandum that were sent through the campus mail.

our consideration, we affirm the district court's judgment for the reasons stated by that court, except to the extent that those reasons differ from the reasoning presented above.

*AFFIRMED*